# RE: FW: BLACKSANDS PACIFIC CREDIT PROPOSAL - UPDATE

Julian Madgett [julian.madgett@icbclondon.com]

**Sent:** Friday, November 15, 2013 9:23 AM
**To:** Edwin Borrini [eborrini@JonesDay.com]
**Cc:** James J. Salerno [jjsalerno@JonesDay.com]; sonia.milizia@icbclondon.com; William F Henze [wfhenze@JonesDay.com]; michael.wong@icbclondon.com; sonia.milizia@icbclondon.com

Edwin,

Thank you.

Whilst we have not created a tender we have a magic circle counsel making unsolicited advance on this deal so a cap at $100K for the Bridge and $400K for the RCF would be more defensible for us to recommend close out of mandate to the client (who pays)

Please also lay out a bit more granularity: We are open to an all US (Cal-NY) law solution if really necessary but given we have a pledged collection accounts between ICBC London (albeit lodged in ICBC NY) and Sinochem UK as oil buyer it would be more comfortable using UK law assignment as very straight forward and both parties are UK based.

**The scope**
- Broadly based upon term sheet already circulated
- Lender ICBC (London) plc (and up to 3 other ICBC subsidiaries / third parties)
- Borrower BLACKSANDS PACIFIC ALPHA BLUE, LLC incorporated in the State of Delaware, the USA, with registered address at 2711 Centerville Road, Suite 400, Wilmington, New Castle, Delaware DE 19808, United States, a private limited liability company
- Offtaker – Obligor BLACKSANDS PACIFIC ENERGY TRADE & SUPPLY, LLC
- Parent -Guarantor: The Blacksands Pacific Group, Inc (incorporated in the State of Delaware, USA), with registered address at 2711 Centerville Road, Suite 400, Wilmington, New Castle, Delaware DE 19808, United States, a private limited liability company

You shall be involved in preparing and negotiating:
- A NY law term loan facility agreement between (1) the Borrower, (2) ICBC as Mandated Lead Arranger (RCF with syndication rights). This is bilateral $20m (net $5m) 90 day Bridge to the Parent and then 5 yr part amortised Revolving Credit Facility (RCF) Reserve Base Finance (RBL) + Prefinance (PF) facility ring fenced on the Group interests the California field (target of acquisition under separate CP concurrent financing from 2nd lien 3rd party financiers + Parent to Borrower paid in equity).
- Security in each case: Bridge parent loan dedicated purpose with pre-emptive right to roll into the first lien facilities for the field (ICBC or otherwise) with a contingent mechanism conversion to an interest in field if retained by ERG (Parent fails to honour & acquisition aborts).
- First lien for RCF registered with due diligence checks (Delaware probably subject to due diligence for max effectiveness and where else interests lodged)
- Documenting various coverage ratios, financial covenants and outflow restrictions
- English law assignment of proceeds with collection account of borrower (charged/pledged) at ICBC London for an account resident in ICBC NY
- Agreement between Borrower and Security Agent in respect of the Borrower's rights under the export contract between borrower – Group Marketing arm and buyer/offtaker (Sinochem UK) (the Export Contract) and related letter of credit proceeds (the Security Assignment);
- English law account security agreement between the Borrower and the Security Agent in respect of the Collection Account (the Account Charge, together with the Facility Agreement and the Security Assignment, the Finance Documents); including review of draft Export Contract solely for assessing its assignability;
- High level review of acquisition terms that nothing inconsistent with the security arrangements for the Bridge and Main

Facility
- Conducting due diligence in respect of the existing facility agreements and other finance documents of the Borrower to identify any borrowing restrictions on the Borrower or restrictions on the creation by the Borrower of the security contemplated in the term sheet and the pro rata First Lien facility provided by Morgan Stanley or another
- liaising with Borrower's counsel
- Advising on and attending to all registration and other post-completion formalities required in England and US;
- Reviewing the initial English legal conditions precedent documents, keeping a conditions precedent checklist (but not chasing) and issuing CP completion for initial drawing on both facilities: US & English law legal opinion on the Finance Documents;
- Undertakings to include that the Facility shall be secured on pro rata first lien terms that are no worse than provided by the Morgan Stanley (or other) facility up to a maximum of $430m principal based upon 100% field interest acquisition by the group
- reviewing the final versions of the Finance Documents to check their consistency with the credit approval of the Mandated Lead Arranger (ICBC);
- generally managing the transaction to completion, including arranging execution of the documentation and preparing conformed copies of the Finance Documents;
- providing a bible of the principal transaction documents (soft and hard)

**Assumptions:**

Proposal on basis following assumptions:
- Facility Agreement based on the current recommended form of the multi-currency revolving facility agreement and international RBL from LMA or appropriate US equivalent and or current accepted practice amended to include customary provisions for similar financings, and the Borrower will not be indulged to negotiate off-market provisions generally;
- There will be no significant change in the structure of the transaction as contemplated in the Summary of Terms and Conditions and term sheets and cashflow models supplied during this tender process
- you only carry out a finite review of the existing facility agreements and finance documents of the Borrower in respect of the issues within the scope.
- The Facility Agreement will be signed and conditions precedent initial utilisation will be either satisfied or waived within 12 weeks of being instructed to commence work. The Bridge Facility shall complete before year end;
- there will be no guarantees other than the Group Parent incorporated in the documentation;
- Up to 4 full marked up drafts of documentation for each Facility (Bridge and RCF)
- There will be no more than [seven] security documents and all security documents (apart from the Security Assignment/Account Charge which will be governed by NY law) and governed by US-UK relevant local law;
- Other than the legal opinions, the conditions precedent documents (including any requisite corporate approvals) will be prepared by the obligors (or their counsel) and delivered to us in a timely fashion and in the usual form, not requiring substantial comment or negotiation;
- Security shall include documentation for a floating fixed interest hedge and oil price collar. ICBC will provide first draft ISDA with Blacksands, need to agree EMIR (permission to deal with OTC Specific Schedule or embed in ISDA), client adherence to EMIR ISDA protocol & MIFID Doc's
- the parties are reasonably familiar with the relevant legal systems (and its limitations) and there will be no protracted negotiation of the legal opinions;
- the obligors will be represented by international counsel experienced in similar transactions;
- not be required to provide any translations (thinking of Chinese not American to English!) . If required to provide translations charged for separately;
- no regulatory advice or other significant specialist involvement required
- meetings or conference calls with the obligors will within reason be preceded by a mark up of their legal counsels' comments to the relevant documents;
- any goods which are subject to the security documents will not be subject to any existing lien or security;

- no intercreditor or priority issues are anticipated in connection with the security documents other than to (i) accommodate the other first lien pro rata rights and acknowledge 2nd lien rights within the Borrower and a due diligence check of senior unsecured pari passu Parent debt (advised there is none) with respect to the Bridge until maturity (ii) give 1st lien pari passu rights to any oil hedge and interest rate swap on our tranche;
- we will not be responsible for monitoring any post-closing perfection requirements, such as delivery of warehouse receipts to the security agent
- the Borrower will obtain any required consents;
- no overseas travel required;
- the only jurisdictions relevant from a legal perspective will be US (NY, Delaware, California) and England and you shall not be required to draft the oil sales contract only review for consistency with security arrangements.
- If legal fees in instalments part up front from the Borrower given inherent uncertainty around acquisitions even at 11th hour

If any of the assumptions or qualifications set out above turned out to be incorrect you would aim to bring this to our attention so we could agree an appropriate change to our fee proposal.
Only if no agreement was possible, would any work still instructed outside the scope of work or the assumptions and qualifications outlined above be charged on an hourly basis at our [usual / ICBC?] rates.

**Please confirm the scope of work and these assumptions and qualifications can be formally shared with the Borrower [who pay for this work]  so they are aware of the basis on which we have made this fee proposal.**

**Finally a presentation on your credentials/transactional relevant experience also appreciated**

I have also copied Michael Wong in our new Group Counsel in ICBC London. He can elaborate on his back ground and Michael may wish to clarify or expand any of my comments above.  As you know our London legal panel was stalled due to our new CEO returning to China on health grounds last month so we await a new CEO start of next year, so in the meantime Michael might wish to engage on hourly rates to enhance the relationship status with Jones Day


Best Regards


Julian Madgett /  麦君安
Head of Commodity & Structured Finance
商品及结构融资业务主管市场部
ICBC (London) plc
81 King William Street
London EC4N 7BG
Tel:     +44 20 7397 8888
Direct: +44 20 7397 8842
Fax:    +44 20 7397 8899
Email:   julian.madgett@icbclondon.com
Website: www.icbclondon.com



Please note this message is intended for the named recipient(s) only. Its contents may be confidential. If you are not an intended recipient, you may not disclose, copy or use in any way the information contained in it; please delete it and notify the sender by return e-mail. ICBC (London) plc does not necessarily accept legal responsibility for the contents of this message. Views and opinions expressed are those of the author and do not necessarily represent those of the Bank.  ICBC (London) plc, 81 King William Street, London EC4N 7BG, registered in England and Wales with limited liabilities. Company No. 4552753. Authorized by the Prudential Regulation Authority and regulated by the Financial Conduct

Authority and the Prudential Regulation Authority.

---

**From:** Edwin Borrini [mailto:eborrini@JonesDay.com]
**Sent:** 14 November 2013 19:22
**To:** Julian Madgett
**Cc:** 'James J. Salerno'; 'sonia.milizia@icbclondon.com'; 'William F Henze'
**Subject:** RE: FW: BLACKSANDS PACIFIC CREDIT PROPOSAL - UPDATE

Julian,

Further to our discussions over the past couple of days, please see below our thoughts and ballpark figures for the quote which we can of course refine.

**Bridge facility**

Assuming all the documentation is governed by NY or California law, we would expect ballpark legal fees around $125,000 which includes:

1. NY law bridge facility agreement - we have assumed that this is stand alone - i.e. it will not directly link into the US$70m facility referred to below.
2. US guarantee from Parent
3. Possible security work - we note that you would like to explore the possibility of taking security over an interest that BSP may hold from ERG - we will need to understand more what the nature of this interest is to be able to confirm whether appropriate security can be taken.  We note that there may also need to be an account charge in respect of the deposit that BSP would make with ICBC.
4.  Memo regarding compliance with credit approval and CP confirm, and issuance of appropriate NY law opinions in respect of the documents.

**5 Year reserve based facility**

Based on the term sheet, if all the documentation is governed by NY or California law, we would expect ballpark legal fees around $400,000-450,000 which includes:

1. NY law Facility agreement
2. US guarantee from Parent
3. US security work (including the drafting and negotiation of security agreement, equity pledges, deposit account control agreements, guarantees, offtaker consents to assignments),  It appears from the term sheet that just the working interest in the oil and gas lease is pledged so there shouldn't be any real property mortgage.   We have assumed that ICBC will want to take its own security rather than piggy back off the security put in place by MS.  If the latter, there could be a slight cost saving as Jones Day would only need to review the adequacy of, rather than negotiate, such documents.
4.  Intercreditor agreement to address (1) rights with MS as first lien provider and (2) rights of MS as 2nd lien holder.  This could be a major piece of work and, alongside the added work of knitting ICBC's first lien loan into the arrangements with MS, accounts for the increase in the fees from our initial quote.
5. Legal due diligence - high level review of due diligence that MS receives (assuming that such investigations did not disclose any material environmental or regulatory concern).
6. Interest rate hedge and oil hedge based on standard ISDA documents.
7. Memo regarding compliance with credit approval and CP confirm, and issuance of appropriate NY law opinions in

respect of the documents.

Our best guess is that David Polk will be acting for MS and we would estimate that they will be charging a minimum of $1.5m.  We appreciate that, from BSP's perspective, they may not be happy that there is inevitably going to be additional expense from the legal side in separately documenting the ICBC tranche of the first lien loan.  We can discuss ways to mitigate this additional expense with you (e.g. possibly sharing the security put in place by MS might bring the figure towards the lower end of the estimate) but ultimately we do not think the amount would come down by much.

I look forward to hearing from you and let me know if you need a more formal estimate with full assumptions etc.

Best,
Ed
Edwin Borrini
Partner
**JONES DAY® - One Firm Worldwide**[SM]
21 Tudor Street
London EC4Y 0DJ
Office +44 207 039 5152
eborrini@jonesday.com

Jones Day is a partnership authorised and regulated by the Solicitors' Regulation Authority (number 223597). A list of the partners and their professional qualifications is open to inspection at the above address. The partners are all lawyers who are also partners in the international law firm of Jones Day.

| | |
|---|---|
| From: | Julian Madgett <julian.madgett@icbclondon.com> |
| To: | 'Edwin Borrini' <eborrini@JonesDay.com>, |
| Cc: | "'sonia.milizia@icbclondon.com'" <sonia.milizia@icbclondon.com>, "'James J. Salerno'" <jjsalerno@JonesDay.com>, 'William F Henze' <wfhenze@JonesDay.com> |
| Date: | 13/11/2013 17:59 |
| Subject: | RE: FW: BLACKSANDS PACIFIC CREDIT PROPOSAL - UPDATE |

Ed

An initial quote appreciated tomorrow

thanks

Julian Madgett / 麦君安

商品及结构融资业务主管市场部
ICBC (London) plc
81 King William Street
London EC4N 7BG
Tel:      +44 20 7397 8888
Direct: +44 20 7397 8842
Fax:     +44 20 7397 8899
Email:  julian.madgett@icbclondon.com
Website: www.icbclondon.com



Please note that this message is intended for the named recipient(s) only. Its contents may be confidential. If you are not an intended recipient, you may not disclose, copy or use in any way the information contained in it; please delete it and notify the sender by return e-mail. ICBC (London) plc does not necessarily accept legal responsibility for the contents of this message. Views and opinions expressed are those of the author and do not necessarily represent those of the Bank.  ICBC (London) plc, 81 King William Street, London EC4N 7BG, registered in England and Wales with limited liabilities. Company No. 4552753. Authorized by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority.

---

**From:** Julian Madgett [mailto:julian.madgett@icbclondon.com]
**Sent:** 13 November 2013 13:04
**To:** 'Edwin Borrini'
**Cc:** 'sonia.milizia@icbclondon.com'; 'James J. Salerno'; 'William F Henze'
**Subject:** RE: FW: BLACKSANDS PACIFIC CREDIT PROPOSAL - UPDATE

I would like a quote for both pieces of work and combo

The bridge is intended to turn into the separated tranche at better yield of the first lien capex-opex financing facility as pitched to the client – you were copied in

The simple $20m nominal bridge with $15m locked up with ICBC so creates an offset for our capital and exposure allocation purposes so just net $5m out the door is guaranteed by parent Blacksands Pacific Inc (BSP) and I would like to
(i)           encroach on the envisaged asset security post acquisition as far as possible in the structure and CP's and
(ii)          indeed seek to convert the amount into an interest in the field if the field stays with ERG in a melt down scenario if the whole take over breaks down as the funds are part of $50m of line demonstrated by BSP (of which $15m has been released from $30m BSP is putting in) so will be used to finance some of ERG's expenditure on the field this year preparing for the investment program ahead post sale.  BSP hold a note  issued by ERG giving them a nominal interest in the field currently (we need to get details) so converting into a note ERG field specific interest as a final case if the acquisition does not happen and BSP defaults would be nice to have flagged.
The amount of course is nominal so not over engineered but nice to have 3 level comfort:
1.      Rolled into the field refinance as part of the first lien finance
2.      BSP Inc parent guarantee (only one he claims to have given as other debt raised on other group assets has been high yield ring fenced on fields in Gulf of Mexcio and central US Dakota etc
3.      Some conversion route to an interest in ERG if the acquisition and BSP parent fails.

Who do you think Morgan Stanley is using as legal counsel – legal costs are for the borrower so don't worry I not fishing with nefarious intent only to understand how MS likely to operate as a combo high yield acquisition $540m and first lien US style oil borrowing base $350m creeping up to $500m as he developed proven reserves grow next year (and first lien cross subsidised by the pay day on the high yield element).

Will let you know when BSP responds the owner is on side to include us but the Board of hard nosed Americans do not feel the china premium using us is worth the more nebulous china relationship benefit

Cheers

Julian Madgett / 麦君安
Head of Commodity & Structured Finance / 商品及结构融资业务主管市场部
ICBC (London) plc
81 King William Street
London EC4N 7BG
Tel:    +44 20 7397 8888
Direct: +44 20 7397 8842
Fax:    +44 20 7397 8899
Email:  julian.madgett@icbclondon.com
Website: www.icbclondon.com



Please note that this message is intended for the named recipient(s) only. Its contents may be confidential. If you are not an intended recipient, you may not disclose, copy or use in any way the information contained in it; please delete it and notify the sender by return e-mail. ICBC (London) plc does not necessarily accept legal responsibility for the contents of this message. Views and opinions expressed are those of the author and do not necessarily represent those of the Bank.  ICBC (London) plc, 81 King William Street, London EC4N 7BG, registered in England and Wales with limited liabilities. Company No. 4552753. Authorized by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority.

---

**From:** Edwin Borrini [mailto:eborrini@JonesDay.com]
**Sent:** 13 November 2013 12:25
**To:** Julian Madgett
**Cc:** 'sonia.milizia@icbclondon.com'; James J. Salerno; William F Henze
**Subject:** Re: FW: BLACKSANDS PACIFIC CREDIT PROPOSAL - UPDATE

Sonia, welcome - I hope you are settling in well.

Julian, thanks.  In broad terms then (I have copied in my partners from NY so that they can see the changes and, once confirmed, we will come back to you on fees):

1. ICBC will definitely provide a 90 bridge facility in the amount of $5m as per the terms set out in "Facility" of the current term sheet with BSP - with $15m being deposited with ICBC and a guarantee being provided by Guarantor. No other security or hedging required.

2. Possible, ICBC may provide further 5 year money (to be decided at later date) in amount of $70m which would be documented separately from, but rank pari passu with, the MS first lien piece.  Details to be agreed going forward but not to be documented as part of the process for 1 above.

Therefore, at this point, do you just want us to provide a quote for the bridge facility (assuming again that will be NY law governed)?

Best
Ed

Edwin Borrini
Partner
**JONES DAY® - One Firm Worldwide**[SM]

21 Tudor Street
London EC4Y 0DJ


Office +44 207 039 5152
eborrini@jonesday.com


Jones Day is a partnership authorised and regulated by the Solicitors' Regulation Authority (number 223597). A list of the partners and their professional qualifications is open to inspection at the above address. The partners are all lawyers who are also partners in the international law firm of Jones Day.