UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

ICBC (LONDON) PLC,

                           Plaintiff,

                        v.

THE BLACKSANDS PACIFIC GROUP, INC.,

                           Defendant.

---------------------------------------------------------

THE BLACKSANDS PACIFIC GROUP, INC. and
BLACKSANDS PACIFIC ALPHA BLUE, LLC,

                        Counterclaim-Plaintiffs,

                        v.

ICBC (LONDON) PLC,

                        Counterclaim-Defendant.

---------------------------------------------------------x

15 Civ. 0070 (LAK) (FM)

**PLAINTIFF ICBC (LONDON) PLC'S REPLY MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Paul S. Hessler
Charles T. Pollak
Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
(212) 903-9000 Telephone
(212) 903-9100 Facsimile
paul.hessler@linklaters.com
charles.pollak@linklaters.com

*Attorneys for Plaintiff ICBC (London)
plc*

February 13, 2015

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.   SUMMARY JUDGMENT IS APPROPRIATE BECAUSE THERE ARE NO
     GENUINE DISPUTES OF MATERIAL FACT .......................................................... 2

     A.   The BLA Establishes That ICBC Did Not Agree To Provide Additional
          Financing .......................................................................................................... 3

     B.   The BLA Prohibits Oral Amendments And Waivers Of The Sort Alleged By
          Blacksands ........................................................................................................ 5

     C.   Blacksands May Not Offset Its Unliquidated Counterclaims Against Its
          Absolute and Unconditional Obligation Under the Guarantee, And The Court
          Should Deny Its Requests To Postpone or Stay Entry of Judgment Pending
          Resolution Of The Counterclaims .................................................................... 6

II.  DEFENDANT WAIVED ALL DEFENSES TO ITS GUARANTEE ............................. 9

III. FEES AND DISBURSEMENTS .................................................................................. 14

CONCLUSION .............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>CASES</u>

*Brink's, Inc. v. City of New York*,
528 F. Supp. 1084 (S.D.N.Y. 1981)..........................................................................8, 9

*Camofi Master LDC v. Coll. P'ship, Inc.*,
452 F. Supp. 2d 462 (S.D.N.Y. 2006)..........................................................2, 3, 5, 14

*Chem. Bank v. Sepler*,
457 N.E.2d 714 (N.Y. 1983)....................................................................................9

*Citibank, N.A. v. Plapinger*,
485 N.E.2d 974 (N.Y. 1985)............................................................................9, 10, 14

*Citizens Fid. Bank & Trust Co. v. Nicolaci*,
Nos. 89 CIV. 4196 JFK, 89 CIV. 4198 JFK, 1990 WL 71464 (S.D.N.Y. May 23, 1990)...........11

*Com/Tech Commc'ns Techs., Inc. v. Wireless Data Sys., Inc.*,
163 F.3d 149 (2d Cir. 1998)....................................................................................7

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
446 U.S. 1, 100 S.Ct. 1460 (1980)........................................................................8, 9

*Diamond Servs. Mgmt., LLC v. Fable Jewelry Co., Inc.*,
No. 12 CIV. 3543, 2012 WL 5871616 (S.D.N.Y. Nov. 20, 2012)..................................6

*First N.Y. Bank for Bus. v. DeMarco*,
130 B.R. 650 (S.D.N.Y.1991)...........................................................................9, 10

*Israel Discount Bank of N.Y. v. 500 Fifth Ave. Assocs.*,
561 N.Y.S.2d 584 (1st Dep't 1990) .........................................................................2

*L.B. Foster Co. v. Am. Piles, Inc.*,
138 F.3d 81 (2d Cir. 1998).................................................................................8, 9

*Lazard Freres & Co. v. Crown Sterling Mgmt., Inc.*,
901 F. Supp. 133 (S.D.N.Y. 1995) .........................................................................9

*Logan v. Williamson & Co.*,
409 N.Y.S.2d 883 (4th Dep't 1978).........................................................................9

*MCC Funding LLC v. Diamond Point Enters., LLC*,
954 N.Y.S.2d 760 (Table), 2012 WL 2537893 (Sup. Ct. Kings Cnty. 2012)...............13

*Mfrs. Hanover Trust v. Yanakas*,
7 F.3d 310 (2d Cir. 1993)...............................................................................10, 12

*Nat'l Westminster Bank USA v. Ross*,
676 F. Supp. 48 (S.D.N.Y. 1987) ...............................................................10, 12, 13

*Nat'l Westminster Bank, U.S.A. v. Ross*,
No. 86 CIV. 6277 (SWK), 1988 WL 96032 (S.D.N.Y. Aug. 30, 1988)......................13

*Omni Quartz, Ltd. v. CVS Corp.*,
287 F.3d 61 (2d Cir. 2002)......................................................................................3

*Siemens Westinghouse Power Corp. v. Dick Corp.*,
220 F.R.D. 232 (S.D.N.Y. 2004) ..............................................................................8

*Valley Nat'l Bank v. Greenwich Ins. Co.*,
254 F. Supp. 2d 448 (S.D.N.Y. 2003).................................................................11, 12

*Valley Nat'l Bank v. Oxygen Unlimited, LLC*,
No. 10 CIV. 5815 GBD, 2010 WL 5422508 (S.D.N.Y. Dec. 23, 2010) ..................2, 15

*Willet v. Lincolnshire Mgmt., Inc.*,
756 N.Y.S.2d 9 (1st Dep't 2003) ..............................................................................6

## STATUTES & RULES

28 U.S.C. § 1291 ....................................................................................................8

Fed. R. Civ. P. 54 ...............................................................................................8, 15

Fed. R. Civ. P. 62 ....................................................................................................9

N.Y. Local Rule 54.1 ..............................................................................................15

N.Y. General Obligations Law § 15-301 (McKinney 2014) .........................................6

Defendant The Blacksands Group, Inc. ("**Blacksands**" or the "**Guarantor**") does not contest that it entered into the November 25, 2013 Bridge Loan Agreement[1] (or "**BLA**"),[2] that it "absolutely, unconditionally and irrevocably guarantee[d]" payment of the Borrower's Obligations pursuant thereto, that $5 million in principal remains outstanding, or that the maturity date of the loan was February 24, 2014. Nonetheless, in a gambit to further delay satisfying its long overdue obligations, Blacksands asserts that (i) Plaintiff ICBC (London) plc promised to extend additional financing to Blacksands, which (Blacksands claims) rendered the issuance of that additional financing "a condition for repayment of the Bridge Loan;" and (ii) extended the repayment date of the BLA and waived interest payments for as long as it would take the Borrower and Blacksands to "develop[] and obtain[] funds from a new capital financing structure for the acquisition of the California oil field."

Neither assertion can defeat Plaintiff's motion for summary judgment. The BLA shows the first allegation to be both demonstrably false and barred by the terms of the agreement. And even if true, the allegation of an oral extension and waiver is immaterial because the BLA renders oral amendments and waivers unenforceable.

In addition, Blacksands has concocted out of whole cloth a "counterclaim" that possesses neither logical consistency nor factual predicate. Contemporaneously with the filing of this Reply, ICBC is filing a motion to dismiss the counterclaim. For purposes of this summary judgment motion, the only relevant issue raised by the counterclaim is whether Blacksands is entitled to set off a possible future, unliquidated liability against its absolute, unconditional and liquidated obligation under the BLA. It is black-letter New York law that it cannot.

---

[1]     Capitalized terms used but not defined in this brief have the meaning ascribed to them in the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment in Lieu of Complaint Under CPLR 3213.

[2]     The BLA is annexed to the Declaration of Robert Clark in Support of Plaintiff's Motion for Summary Judgment in Lieu of Complaint as Exhibit A.

There are no genuine disputes of material fact, and ICBC respectfully requests that the Court enter judgment enforcing Blacksands' absolute and unconditional Guarantee.

## I.    SUMMARY JUDGMENT IS APPROPRIATE BECAUSE THERE ARE NO GENUINE DISPUTES OF MATERIAL FACT

A plaintiff establishes a *prima facie* case on a guarantee by showing (a) execution and delivery; (b) demand; and (c) failure to pay. *Israel Discount Bank of N.Y. v. 500 Fifth Ave. Assocs.*, 561 N.Y.S.2d 584 (1st Dep't 1990); *see also Valley Nat'l Bank v. Oxygen Unlimited, LLC*, No. 10 CIV 5815 GBD, 2010 WL 5422508, at *3 (S.D.N.Y. Dec. 23, 2010) ("To succeed on a motion for summary judgment, a plaintiff suing on a promissory note needs to merely establish the absence of a genuine issue as to the execution and default unless the obligor demonstrates the existence of a triable issue of fact.") (internal quotations omitted).

Blacksands does not dispute that it entered into the BLA;[3] it "absolutely, unconditionally and irrevocably guarantee[d]" payment of the Borrower's Obligations pursuant thereto;[4] $5 million in principal remains outstanding;[5] the maturity date of the loan was February 24, 2014;[6] and that Plaintiff issued a Demand for Payment on August 14, 2014.[7]  These facts establish Plaintiff's *prima facie* case, and Plaintiff has satisfied its burden of production. *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 471 (S.D.N.Y. 2006).

Because Plaintiff has established a *prima facie* case and Blacksands seeks to avoid its obligation by raising affirmative defenses, Blacksands must "present evidence from which a reasonable jury could find a *bona fide* defense to payment." *Camofi Master*, 452 F.

---

[3]    Defendant's Rule 56.1 Response to Plaintiff's Statement of Material Facts in Support of Motion for Summary Judgment and Counter-Statement of Material Facts ("**Def. Rule 56.1 Resp.**") ¶ 4.

[4]    *Id.* ¶¶ 8-11.

[5]    *Id.* ¶¶ 12-15.

[6]    *Id.* ¶ 16.

[7]    *Id.* ¶¶ 23, 25.

Supp. 2d at 471. "A stringent standard applies to evaluating a defense to a negotiable instrument among sophisticated business people." *Id.* (quotations omitted). To establish a *bona fide* defense, Defendant "may not rely on conclusory allegations, but instead must show by admissible evidence a genuine and substantial issue rebutting holder's entitlement to payment." *Id.* (quotations omitted). In evaluating Blacksands' opposition, the Court must apply the parol evidence rule, which bars the introduction of evidence outside of an agreement that contradicts or varies the terms of the parties' written agreement. *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) ("It is well established that a court may not admit extrinsic evidence in order to determine the meaning of an unambiguous contract.").

The only material fact that Blacksands contests is whether payment is due. Blacksands' assertions on that score—that ICBC (i) promised to extend additional financing, which rendered the issuance of that additional financing "a condition for repayment of the Bridge Loan;" and (ii) extended the repayment date of the BLA and waived interest payments for as long as it would take the Borrower and Blacksands to obtain alternate funding—are meritless.[8] Blacksands also requests a stay of judgment pending resolution of its counterclaims.[9] Because there is "no just reason for delay," that request should be denied.

### A.    The BLA Establishes That ICBC Did Not Agree To Provide Additional Financing

In its Rule 56.1 Response, Blacksands asserts that ICBC promised to extend additional financing to Blacksands, which (according to Blacksands) rendered the issuance of that additional financing "a condition for repayment of the Bridge Loan."[10] Blacksands does not pursue this theory in its Opposition, and does not articulate when the alleged promise was made

---

[8]     Def. Rule 56.1 Resp. ¶ 27.

[9]     Opp. at 19-20.

[10]    Def. Rule 56.1 Resp. ¶ 17.

or why it would constitute a condition for repayment of the BLA. But the only way in which the alleged agreement could have been a condition to repayment is if the promise had been made and the condition established in the BLA or in a subsequent written agreement signed by the parties.

No promise to extend additional financing was made in the BLA, which provides only that the parties would "*enter into* and continue good faith negotiations of additional financing arrangements . . . as described more fully in that certain letter of confirmation, dated November 14, 2013, from the Lender to the Guarantor, together with the term sheet referred to therein, and as the same may be modified by mutual agreement among such parties." (BLA § 10.11) (emphasis added).  The November 14, 2013 letter[11] that was referenced in the BLA expressly states that the "[f]inal approval" of any such additional financing is "to be *at ICBC [sic] sole discretion* subject to final review to be completed in good faith within the 90 day Bridge Loan maturity date." (Clark Decl. Ex. 1) (emphasis added).  Thus, the only promise relating to additional financing contained in the BLA was that the parties would "enter into" negotiations regarding additional financing that ICBC reserved "sole discretion" to approve.

There were no other agreements between the parties regarding additional financing. Indeed, the BLA contained an integration clause providing that, "[t]his Agreement and the other Loan Documents constitute the entire understanding among the parties hereto with respect to the subject matter hereof and thereof and supersede any prior agreements, written or oral, with respect thereto." (BLA § 10.12). These provisions conclusively demonstrate that there was no promise of additional financing, and that the additional financing could not have been a condition to repayment. The only provision regarding repayment states that, "[o]n the Maturity Date, the Borrower shall repay to the Lender, the entire principal amount of the Loans then

---

[11]     The November 14, 2013 letter is annexed to the Declaration of Robert Clark in Support of Plaintiff and Counterclaim-Defendant ICBC (London) plc's Motion to Dismiss Counterclaims and in Further Support of Its Motion for Summary Judgment ("**Clark Decl.**"), filed contemporaneously herewith, as Exhibit 1.

outstanding."[12] (BLA § 2.6). Plaintiff cannot unilaterally claim additional conditions to repayment. *See Camofi Master*, 452 F. Supp. 2d at 476 (rejecting counterclaim-plaintiff's assertion of a condition precedent because "the Notes do not condition repayment upon any act by [counterclaim-defendant]. Instead the terms of the Notes explicitly require repayment of the entire balance on June 15, 2005, without qualification.").

Given that, the only way that a promise of additional financing could have become a condition to repayment of the BLA was if the parties subsequently agreed in writing to that effect. The BLA provides that "[n]o provision of this Agreement or any other Loan Document may be waived, amended, amended and restated, supplemented or otherwise modified, … *unless made pursuant to a written agreement between the Lender and the Obligors*." (BLA § 10.2) (emphasis added).  There is no such written agreement.

### B.  The BLA Prohibits Oral Amendments And Waivers Of The Sort Alleged By Blacksands

In its Rule 56.1 Response, but not in its Opposition, Defendant asserts that it need not satisfy its obligations because "Plaintiff agreed to waive interest payments and extend Alpha Blue's time to repay the Bridge Loan until Alpha Blue and Blacksands developed and obtained funds from a new capital financing structure for the acquisition of the California oil field.  That date has not yet occurred." (Def. Rule 56.1 Resp. ¶ 27). This assertion is based on an oral "promise" alleged by Raheem Brennerman, the CEO of Blacksands, to have been made by Bo Jiang, then CEO of Plaintiff, in June 2014.  (*Id.* ¶ 87; Brennerman Decl. ¶¶ 47, 51).

Assuming, *arguendo*, that this conversation occurred, it has no bearing on this motion for summary judgment. The BLA provides that none of its provisions may be altered except "pursuant to a written agreement between the Lender and the Obligors." (BLA § 10.2). In

---

[12]     The Maturity Date is defined as February 24, 2014.  (BLA § 1.1).

New York, such requirements are reinforced by statute.[13] There is no such written agreement amending the terms of the BLA, and the alleged oral amendment therefore is ineffective.

Furthermore, pursuant to the BLA's "No Waiver" provision, the fact that Plaintiff agreed to extend the repayment date until March 31, or that it did not immediately file suit to recover the amounts owing, does not serve as a waiver of Plaintiff's rights under the BLA.[14]

> **C.     Blacksands May Not Offset Its Unliquidated Counterclaims Against Its Absolute and Unconditional Obligation Under the Guarantee, And The Court Should Deny Its Requests To Postpone or Stay Entry of Judgment Pending Resolution Of The Counterclaims**

Blacksands offers no legal or factual basis for its assertion in its Rule 56.1 Response that it is "obliged to repay the outstanding principal amount of the Bridge Loan only to the extent that amount exceeds the monetary damages caused by Plaintiff's conduct." (Def. Rule 56.1 Resp. ¶ 29). In New York, "there is no right to set off a possible, unliquidated liability against a liquidated claim that is due and payable." *Willet v. Lincolnshire Mgmt., Inc.*, 756 N.Y.S.2d 9, 10 (1st Dep't 2003); *see also Diamond Servs. Mgmt., LLC v. Fable Jewelry Co., Inc.*, No. 12 CIV. 3543, 2012 WL 5871616, at *5 (S.D.N.Y. Nov. 20, 2012). Defendant's speculative recovery under its far-fetched counterclaims, including an amorphous $50 million claim for "lost profits," cannot be set off against its due and payable obligation under an absolute and unconditional guarantee that Blacksands admits constitutes an instrument for the payment of money only under New York law. (Def. Rule 56.1 Resp. ¶ 11).

---

[13]     "A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent." N.Y. General Obligations Law § 15-301 (McKinney 2014).

[14]     The BLA states: "No failure or delay by the Lender in exercising any right, remedy, power or privilege hereunder or under any other Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, remedy, power or privilege, or any abandonment or discontinuance of steps to enforce such right, remedy, power or privilege, preclude any other or further exercise of any other right, remedy, power or privilege."  (BLA § 10.3).

Nor is there merit to Defendant's assertion that discovery on its counterclaims is necessary before judgment is rendered on the BLA. Defendant mistakenly relies on *Com/Tech Communication Technologies, Inc. v. Wireless Data Systems, Inc.*, 163 F.3d 149 (2d Cir. 1998) for the principle that "Blacksands and Alpha Blue must be permitted to plead any counterclaims that the Federal Rules permit." (Opp. at 9). In *Com/Tech*, the Second Circuit, citing the *Erie* doctrine, merely held that CPLR 3213's prohibition on non-summary judgment counterclaims does not apply in federal court. *Com/Tech*, 163 F.3d at 151. The court remanded, noting only that in its adjudication of the counterclaims, "the district court *may find* that facts are there alleged that render summary judgment for Com/Tech inappropriate." *Id.* (emphasis added).

The question here, therefore, is whether the facts alleged in the counterclaims would render summary judgment for Plaintiff inappropriate. The mere existence of disputed facts within those counterclaims is insufficient to defeat summary judgment if those disputed facts do not create any genuine disputes of material fact for purposes of summary judgment. The Counterclaim alleges that Plaintiff (i) failed to honor an alleged "preliminary agreement" to issue the RCF, and (ii) somehow defrauded Defendant in order to induce it to make the very interest payments on outstanding amounts that Defendant had already contractually agreed in the BLA. These claims are utterly meritless.[15] Even taken at face value, however, neither is relevant to Defendant's outstanding obligations under the BLA. Their resolution does not determine whether Defendant's unconditional guarantee obligates it to repay the $5 million it owes in principal or the amount it owes in accrued interest or fees, and discovery on these issues cannot inform this Court's summary judgment determination.

---

[15]     *See* Plaintiff's Motion to Dismiss Counterclaims, filed concurrently with this Reply.

While Defendant cites a number of New York State cases in which summary judgment was denied "where defendants raise defenses or counterclaims that arise from the same underlying transaction as the plaintiff's claim and that must be determined together," (Opp. at 11), these counterclaims meet neither of those criteria. Likewise, it is not the case here that "discovery is needed to resolve the dispute." (*Id.*) As set-off is unavailable for an unliquidated claim against a liquidated claim, and as no discovery on these issues could inform the Court's summary judgment determination, it would be inappropriate to deny summary judgment on the basis that there are disputed counterclaims.

The Court should also deny Defendant's request that the Court delay entry of a final judgment on the BLA until its counterclaims are resolved. Defendant already has delayed satisfaction of its absolute and unconditional obligation for nearly a year. Because there is "no just reason for delay," this Court may enter final judgment on Plaintiff's summary judgment motion while the counterclaims remain pending. *See L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing Fed. R. Civ. P. 54(b)); *see also Siemens Westinghouse Power Corp. v. Dick Corp.*, 220 F.R.D. 232, 234 (S.D.N.Y. 2004) (Rule 54(b) order warranted where (1) there are multiple claims or parties; (2) the order at issue is a final decision within the meaning of 28 U.S.C. § 1291; and (3) there is "no just reason for delay."). The "mere presence" of "nonfrivolous counterclaims" that may offset a party's liability does not preclude Rule 54(b) certification. *Siemens*, 220 F.R.D. at 234 (citing *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 9, 100 S. Ct. 1460, 1465 (1980)). Instead, "[o]nly those claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for [R]ule 54(b) certification." *Siemens*, 220 F.R.D. at 234. And the fact that counterclaims under one contract could set off judgment on a separate contract is not a "just reason for delay." *See Brink's, Inc. v. City of New*

*York*, 528 F. Supp. 1084, 1088 n.14 (S.D.N.Y. 1981) (permitting severance of claim where the defendant's counterclaims related to one contract, and "thus clearly [were] distinct and independent" from the Plaintiff's claim regarding a different contract).[16]

Furthermore, courts often find that the equities favor finding a judgment separable, where, as here, counterclaims "appear to be interposed primarily for the purpose of delaying judgment" on an irrefutable claim. *See Lazard Freres & Co. v. Crown Sterling Mgmt., Inc.*, 901 F. Supp. 133, 138 (S.D.N.Y. 1995). Plaintiff is "entitled to pursue collection of its judgment" against Blacksands.  *L.B. Foster*, 138 F.3d at 87. Because further delaying the remaining proceedings "would serve only to postpone the satisfaction of [Plaintiff's] judgment," granting 54(b) certification would be "consistent with sound judicial administration and prevent[] a potential unjust delay of [ICBC's] execution of its judgment."[17]  *Id.*

## II.      DEFENDANT WAIVED ALL DEFENSES TO ITS GUARANTEE

Blacksands is contractually barred from asserting any defenses to its guarantee. Absolute and unconditional guarantees, like the one that Blacksands provided, have been found to preclude guarantors from asserting a broad range of defenses under New York law. *See, e.g., Citibank, N.A. v. Plapinger*, 485 N.E.2d 974, 975 (N.Y. 1985) (defense of fraud in the inducement); *Chem. Bank v. Sepler*, 457 N.E.2d 714, 716 (N.Y. 1983) (defense of lack of further consideration and cessation of underlying business relationship); *see also First N.Y. Bank for*

---

[16]     The New York appellate division, in *Logan v. Williamson & Co.,* severed a defendant's counterclaim from a successful summary judgment motion under CPLR 3213, finding that "defendant asserts a cause of action on a related but independent and unliquidated counterclaim, one arising out of the same general transaction but one which does not constitute a defense to plaintiff's cause of action. Under these circumstances plaintiff's motion for summary judgment should not be denied." 409 N.Y.S.2d 883, 885 (4th Dep't 1978).

[17]     Should the Court nevertheless determine to delay final judgment pending the outcome of Defendant's counterclaims, Plaintiff requests that the Court protect Plaintiff by requiring Defendant to deposit the amount of the judgment with the court, in an interest bearing account, pending determination of the counterclaims. Such relief is authorized by Fed. R. Civ. P. 62(h), which permits a court to prescribe terms necessary to secure the benefit of the stayed judgment for the party in whose favor it was entered.  *See Curtiss-Wright Corp.*, 446 U.S. at 13, 100 S. Ct. at 1467, n.3 (suggesting that such a deposit would protect all parties and be within the power of the district court).

*Bus. v. DeMarco*, 130 B.R. 650, 654 (S.D.N.Y. 1991) ("Absolute and unconditional guaranties . . . . are consistently upheld by New York courts. Indeed, unconditional guaranties have been held to foreclose, as a matter of law, guarantors from asserting any defenses or counterclaims.").

In *Plapinger*, the New York Court of Appeals held that a broad unconditional guarantee and waiver of defenses on a commercial loan barred affirmative defenses and counterclaims of fraud. 485 N.E.2d at 977. The court upheld the waiver and rejected defenses to the guarantee, in part because, as here, the guarantee was not a generalized boilerplate clause, but rather a multimillion dollar guarantee that was signed following extended negotiations between sophisticated business people. *Id.* The guarantee included language similar to Defendant's waiver here.[18] The court found that "the substance of defendants' guarantee forecloses their reliance on the claim that they were fraudulently induced to sign the guarantee by the banks' oral promise of an additional line of credit. To permit that would in effect condone defendants' own fraud in deliberately misrepresenting their true intention . . . when putting their signatures to their absolute and unconditional guarantee." *Id.* (quotations and internal citations omitted).

In an attempt to avoid its guarantee, Blacksands argues that notwithstanding its waiver of defenses and counterclaims, it should nonetheless be able to raise defenses because (i) its waiver was not sufficiently specific and (ii) the guarantee was not negotiated, but rather constituted "boilerplate." These arguments are meant to justify the application of cases such as *National Westminster Bank USA v. Ross*, 676 F. Supp. 48 (S.D.N.Y. 1987) ("***Ross I***") and *Manufacturers Hanover Trust v. Yanakas*, 7 F.3d 310, 316 (2d Cir. 1993), in which courts have permitted guarantors to raise defenses under certain circumstances. In *Yanakas*, for example, the Second Circuit "elaborated on *Plapinger* by noting that 'in order to be considered sufficiently

---

[18]      The *Plapinger* waiver was "'irrespective of (i) any lack of validity . . . of the . . . Restated Loan Agreement . . . or any other agreement or instrument relating thereto,' or '(vii) any other circumstance which might otherwise constitute a defense' to the guarantee." 485 N.E.2d at 977.

specific to bar a defense of fraudulent inducement ... a guarantee must contain explicit disclaimers of the particular representations that form the basis of the fraud-in-the-inducement claim.'" *Valley Nat'l Bank v. Greenwich Ins. Co.*, 254 F. Supp. 2d 448, 457 (S.D.N.Y. 2003) (citing *Yanakas*, 7 F.3d at 316). In its analysis, the Second Circuit identified three significant differences between waivers considered sufficiently specific and those that were not:

> First, it found the guarantee before it signed by defendant Yanakas to be a "generalized boilerplate exclusion" that the bank used routinely, and as a result concluded that it was not a product of negotiation. Second, the *Yanakas* guarantee did not purport to waive any defenses to its own validity. Third, the *Yanakas* guarantee had no blanket disclaimer of the type found in *Plapinger*, as to "any other circumstance which might otherwise constitute a defense" to the guarantee.

*Greenwich Ins. Co.*, 254 F. Supp. 2d at 457-58 (internal citations omitted).

Not one of these factors is present here. <u>First</u>, although Blacksands asserts that "there was no negotiation of the guarantee or merger clause; all the language was boilerplate supplied by Plaintiff," (Opp. at 17), that assertion is contradicted by the BLA. Blacksands, which was represented by Troutman Sanders LLP in connection with the BLA, (*see* BLA § 10.1(a)(ii)), expressly acknowledges that it was advised by counsel,[19] and that counsel negotiated the Loan Documents.[20] Blacksands, whose own statements show that it is a sophisticated party,[21] cannot escape the terms of the BLA by claiming ignorance of its terms. *See Citizens Fid. Bank & Trust Co. v. Nicolaci*, Nos. 89 CIV. 4196 JFK, 89 CIV. 4198 JFK, 1990 WL 71464, at *3 (S.D.N.Y. May 23, 1990) ("It is black letter law that a party who signs an instrument manifests assent to it

---

[19]    (BLA §§ 10.15, 1.6 (agreeing that "it ha[d] been advised by counsel in the negotiation, execution and delivery of this Agreement and the other Loan Documents,")).

[20]    (*Id.* §§ 1.6 (agreeing "that it and its counsel reviewed and participated in the preparation and negotiation" of the Loan Documents.)). "Loan Documents" is defined to mean the BLA and all agreements, certificates, documents or instruments executed and delivered in connection therewith. (BLA § 1.1 at p. 9).

[21]    Defendant is "an international oil and gas corporation that, together with its subsidiaries, explores, produces, and sells crude oil, natural gas, natural gas liquids, and bitumen to customers in the United States and internationally. The company also engages in the trading and marketing of crude oil and petroleum products, and offers oilfield services." (Def. Rule 56.1 Resp. ¶ 43).

and may not later complain that he did not read the instrument or that he did not understand its contents."). Moreover, the BLA hardly constitutes "boilerplate;" it is "not a preprinted form, in which certain blanks are filled in by hand," but rather is "the product of negotiations among sophisticated businessmen that produced custom-crafted instruments." *Greenwich Ins. Co.*, 254 F. Supp. 2d at 458 (contrasting a contract drafted similarly to the BLA with "boilerplate").

<u>Second</u>, unlike the *Yanakas* guarantee, Blacksands' guarantee <u>does</u> waive all defenses to its own validity. Blacksands agreed that its guarantee is "absolute and unconditional … irrespective of any other circumstance *which might otherwise constitute a legal or equitable discharge or defense in favor of the Guarantor* . . . , it being the intent of this Section 9.2 that the obligations of the Guarantor hereunder shall be absolute and unconditional *under any and all circumstances*." (BLA § 9.2) (emphasis added). As if that were not specific enough, Section 9.2 also states that, without limiting the generality of the foregoing, "the occurrence of any one or more of the following shall, to the fullest extent permitted by Applicable Law, not alter or impair the obligations of the Guarantor hereunder *which shall remain absolute and unconditional* as described above: . . . (b) any lack of validity or enforceability of any Loan Document or any other agreement or instrument relating thereto against any Obligor."[22]  (*Id.*)

<u>Third</u>, unlike in *Yanakas*, Blacksands' guarantee <u>does</u> have a blanket disclaimer of the type found in *Plapinger*, as to "any other circumstance which might otherwise constitute a defense" to the guarantee.[23]  Blacksands' guarantee bars it from interposing any defenses.

Hoping to avoid this result, Defendant asserts that its guarantee should not be read to bar it from asserting <u>counterclaims</u> based on fraud, (Opp. at 14-16), citing *Nat'l Westminster*

---

[22]     "Obligors" means "the Borrower and the Guarantor." (BLA § 1.1).

[23]     (*Id.* § 9.2 (stating that the guarantee is "absolute and unconditional . . . <u>irrespective of any other circumstance which might otherwise constitute a legal or equitable discharge or defense in favor of the Guarantor</u>")) (emphasis added).

*Bank USA v. Ross*, 676 F. Supp. 48 (S.D.N.Y. 1987) ("*Ross I*"), and *MCC Funding LLC v. Diamond Point Enterprises, LLC,* 954 N.Y.S.2d 760 (Table), 2012 WL 2537893 (Sup. Ct. Kings Cnty. 2012). Defendant fails to inform the Court that the *Ross I* court revisited the issue and *granted* summary judgment on reargument, holding that while *counterclaims* sounding in fraud may not be waived, application of that principle to *defenses* based on fraud is inapposite, as "that doctrine appears to have been invalidated in a recent decision." *Nat'l Westminster Bank, U.S.A. v. Ross*, No. 86 CIV. 6277 (SWK), 1988 WL 96032, at *2, n.1 (S.D.N.Y. Aug. 30, 1988). Similarly, *MCC Funding LLC*, is inapposite, because it too arises in the context of a motion to dismiss a *counterclaim* for fraud, and does not address the effectiveness of a waiver of *defenses*. *See id.*, at *10. In any event, as set forth in ICBC's motion to dismiss, the fraud counterclaim is nonsensical and must be dismissed.

        The remainder of Defendant's argument appears to conflate the agreement's merger clause and its effect on the parol evidence rule with the law governing the effectiveness of Blacksands' waiver of defenses to the guarantee. (Opp. at 17 (arguing that "a merger clause will only exclude parol evidence of fraud in the inducement where the clause contains an explicit disclaimer regarding the same subject matter as the alleged oral representation," and because "[n]othing in the Bridge Loan Agreement specifically disclaims any reliance upon Plaintiff's agreement to follow the Bridge Loan with the RCF," there is therefore "no bar to any Blacksands claim for fraud in the inducement (or otherwise)."). As a factual matter, the BLA *is* specific with respect to the RCF: as set forth above, the BLA refers to the potential RCF, stating only that the parties agreed to "enter into" negotiations regarding it, and stated that there were no other agreements between the parties. (BLA §§ 10.11, 10.12). Blacksands cannot argue that was fraudulently induced to enter into the BLA by a promise of additional financing, when the BLA

13

clearly shows there was no such promise. The court in *Plapinger* rejected a similar argument, finding that, where sophisticated parties negotiated and agreed to a guarantee, "[i]t is unrealistic in such circumstances to expect an express stipulation that defendants were not relying on a separate oral agreement to fund an additional multimillion dollar line of credit, when they themselves have denominated their obligation unconditional, and have reinforced that declaration by their agreement that the 'absolute and unconditional' nature of their guarantee was 'irrespective of (i) any lack of validity . . . of the . . . Restated Loan Agreement . . . or any other agreement or instrument relating thereto,' or '(vii) any other circumstance which might otherwise constitute a defense' to the guarantee." *Plapinger*, 485 N.E.2d at 977.

Where a defendant seeks to invoke defenses despite a waiver of its right to do so, "[u]nder New York law, such a waiver among sophisticated parties is effective to overcome virtually any defense to enforcement." *Camofi Master*, 452 F. Supp. at 477 (finding that defendant's fraud defense failed in the face of his specific waiver of his right to protest payment of notes). Blacksands is a sophisticated party and should be held to its promise.

## III.   FEES AND DISBURSEMENTS

Defendant asserts that summary judgment should be denied for lack of evidence supporting Plaintiff's claim for attorney's fees and disbursements. (*See* Opp. at 10, 12, 18-20; Def. Rule 56.1 Resp. ¶ 37).[24] The BLA establishes Plaintiff's entitlement.[25]

---

[24]   Defendant "disputes" Blacksands' obligation to reimburse Plaintiff's legal fees, but only because it disagrees with Plaintiff's citation of the relevant sections of the BLA. (Def. Rule 56.1 Resp. ¶ 7). The Obligors' indemnification obligation plainly extends to reasonable attorneys' fees and disbursements "incurred in connection with actions between or among the parties hereto," and specifically as a result of "the . . . enforcement . . . of this Agreement" (BLA §§ 10.6, 10.6(ii)).

[25]   (*See* BLA § 10.6. (obligating the Obligors, jointly and severally, to reimburse Plaintiff upon demand for all legal and other expenses reasonably incurred by it in connection with, among other things, the "enforcement . . . of this Agreement.")).

Should the Court grant attorneys' fees and disbursements, Plaintiff intends to file a notice and annexed bill of costs pursuant to Local Civil Rule 54.1 and Federal Rule of Civil Procedure 54(d)(2). Defendant can then object to the quantum or reasonableness of the bill of costs. Pursuant to Fed. R. Civ. P. 54(d), this Court may resolve any disputes, or may refer the motion for attorneys' fees to a magistrate judge as if it were a dispositive pretrial matter. *See, e.g., Oxygen Unlimited, LLC*, 2010 WL 5422508, at *4. Under no circumstances, of course, is Plaintiff's decision not to provide a bill with its motion a basis for denying summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant it summary judgment.

Dated:      New York, New York
            February 13, 2015

Respectfully submitted,

Linklaters LLP

By: _____
            Paul S. Hessler
            Charles Pollak
1345 Avenue of the Americas
New York, NY 10105
(212) 903-9000
(212) 903-9100 (fax)

*Attorneys for Plaintiff ICBC (London) plc*

15