UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ICBC (LONDON) PLC,

                    Plaintiff,

        -against-

THE BLACKSANDS PACIFIC GROUP, INC.,

                    Defendant.

15 Civ. 0070 (LAK) (FM)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - 

THE BLACKSANDS PACIFIC GROUP, INC. and
BLACKSANDS PACIFIC ALPHA BLUE, LLC,

                    Counterclaim-Plaintiffs

        -against-

ICBC (LONDON) PLC,

                    Counterclaim-Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF ICBC (LONDON) PLC'S
### RESPONSE TO DEFENDANT'S COUNTER-STATEMENT OF
### MATERIAL FACTS

        Pursuant to Rule 56.1 of the Local Rules of the United States District Court for

the Southern District of New York, Plaintiff ICBC (London) plc ("**Plaintiff**" or the "**ICBC**")

hereby responds to Defendant's Counter-Statement of Material Facts.

        Plaintiff does not reply to Defendant's responses to Plaintiff's Rule 56.1

Statement.  As set forth in Plaintiff's Reply Memorandum of Law In Further Support of Its

Motion For Summary Judgment, Defendant's denials do not create a genuine dispute of

material fact.

In addition to the responses set out below, Plaintiff objects to Defendant's counter-statement of material facts on the ground that the statements, many of which are fabrications, are not relevant to Plaintiff's motion for summary judgment and thus do not create a genuine issue of material fact. Plaintiff reserves its right to seek appropriate sanctions to remedy the false statements contained in Defendant's Counter-Statement of Material Facts, the Declaration of Raheem Brennerman, and the remainder of Defendant's papers.

### **Plaintiff's Response to Defendant's Counter-Statement of Material Facts**

43.     Blacksands is an international oil and gas corporation that, together with its subsidiaries, explores, produces, and sells crude oil, natural gas, natural gas liquids, and bitumen to customers in the United States and internationally. The company also engages in the trading and marketing of crude oil and petroleum products, and offers oilfield services. Brennerman Dec. ¶ 4.

**Response**: Plaintiff lacks knowledge and information sufficient to form a belief as to the truth of this statement. Plaintiff does not dispute it for purposes of this summary judgment motion, but reserves all rights to challenge this statement should summary judgment be denied.

44.     In 2013, Blacksands and Alpha Blue began negotiating with Morgan Stanley regarding the issuance of a credit facility to support Blacksands' and Alpha Blue's planned purchase of an oil field in California. Brennerman Dec. ¶ 5.

**Response**: Plaintiff lacks knowledge and information sufficient to form a belief as to the truth of this statement. Plaintiff does not dispute it for purposes of this

summary judgment motion, but reserves all rights to challenge this statement should summary judgment be denied.

45.     Morgan Stanley offered to issue Blacksands and Alpha Blue a $500 million first-lien credit facility, subject to credit approval. Brennerman Dec. ¶ 6.

**Response**: Plaintiff lacks knowledge and information sufficient to form a belief as to the truth of this statement.  Plaintiff does not dispute it for purposes of this summary judgment motion, but reserves all rights to challenge this statement should summary judgment be denied.

46.     At or around that same time, Blacksands and Alpha Blue began negotiating with QInvest to obtain a bridge loan to ensure that Blacksands and Alpha Blue had adequate financing during the period before they closed on a credit facility with Morgan Stanley. QInvest offered to make a bridge loan of $20 million to Blacksands and Alpha Blue, which would be due a year after it was issued. Brennerman Dec. ¶ 7.

**Response**: Plaintiff lacks knowledge and information sufficient to form a belief as to the truth of this statement.  Plaintiff does not dispute it for purposes of this summary judgment motion, but reserves all rights to challenge this statement should summary judgment be denied.

47.     At or around that same time, Plaintiff also negotiated with Blacksands and Alpha Blue concerning Plaintiff's offer to issue a revolving credit facility to Blacksands and Alpha Blue that would be part of the financing structure for their acquisition of the California oil field. Brennerman Dec. ¶ 8.

**Response**: Disputed.  Although Plaintiff, Blacksands, and Alpha Blue discussed the possibility of Plaintiff providing a revolving credit facility to entities affiliated

with Blacksands, and agreed in the Bridge Loan Agreement dated November 25, 2013 to enter into negotiations concerning such a facility, Blacksands and Alpha Blue continuously delayed and refused to negotiate, indicating that they were pursuing financing with other parties. *See* Declaration of Paul S. Hessler In Support of Plaintiff's Motion to Dismiss Counterclaims ("Hessler Decl."), Exhibits 2-7; *see also* Memorandum of Law in Support of Counterclaim-Defendant ICBC (London) plc's Motion to Dismiss Counterclaims ("Motion to Dismiss"), Statement of Facts, Section B.

48.     Plaintiff agreed to issue a $70 million first lien pari passu revolving credit facility ("RCF") to Blacksands and Alpha Blue that included the $20 million Bridge Loan that would be made to Alpha Blue during the period before the RCF was issued. Brennerman Dec. ¶ 9.

**Response**:  Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

49.     The parties agreed that the RCF would be issued 90 days after the issuance of the Bridge Loan. Brennerman Dec. ¶ 10.

**Response**:  Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

50.     The parties also agreed that the Bridge Loan amount would be refinanced into the RCF when the latter was issued. Brennerman Dec. ¶ 11.

**Response**: Disputed. Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

51.    That the Bridge Loan amount was intended to be refinanced into the RCF is confirmed by, among other things, an October 27, 2013 e-mail from Julian Madgett, Plaintiff's Head of Commodity and Structured Finance to Mike Kelly, Blacksands' Senior Vice President, Acquisitions, and Raheem Brennerman, Blacksands' Chairman and CEO and Manager of Alpha Blue, in which Mr. Madgett wrote: "[t]he $5m net bridge funds should be included as refinanced by the main advance . . . ." Brennerman Dec. ¶ 12; Ex. 1 at 1.[1]

**Response**: Disputed. Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

52.    Although the nominal amount of the Bridge Loan was $20 million, the parties actually intended that only $5 million would be disbursed to Alpha Blue. The remaining $15 million was to be placed in a reserve account. Brennerman Dec. ¶ 14.

**Response**: Undisputed.

53.    Blacksands and Alpha Blue agreed to the Bridge Loan solely in reliance on Plaintiff's promise to issue the RCF, specifically, in reliance on Plaintiff's promise to issue the RCF within 90 days of the issuance of the Bridge Loan, and in reliance on Plaintiff's agreement to refinance the Bridge Loan into the RCF. Blacksands and Alpha Blue would not have agreed to the Bridge Loan in the absence of a promise by Plaintiff to issue the RCF. Brennerman Dec. ¶ 15.

---

[1]    Unless otherwise stated, all exhibit citations in Plaintiff's text are to the exhibits attached to the Brennerman Declaration.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

54.    In reliance on Plaintiff's promise to issue the RCF, Blacksands and Alpha Blue developed a three-part capital financing structure for the acquisition of the California oil field: (i) $350 million first lien from another source; (ii) $70 million first lien pari passu RCF from Plaintiff; and (iii) $275 million second lien credit facility from a third source. Brennerman Dec. ¶ 16.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

55.    Plaintiff was aware that Blacksands and Alpha Blue had developed a capital financing structure for the acquisition of the California oil field, and Plaintiff knew, or it was at least foreseeable to Plaintiff, that the acquisition could not go forward if Plaintiff did not fulfill its promise to issue the RCF. Brennerman Dec. ¶ 17.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

56.    From November 13 through November 15, 2013, Julian Madgett, Plaintiff's Head of Commodity and Structured Finance exchanged a series of e-mails with Edwin Borrini, Plaintiff's counsel at Jones Day, confirming that Plaintiff agreed to issue the RCF and Bridge Loan to Blacksands and Alpha Blue, and that the Bridge Loan would be refinanced

into the RCF within 90 days of the Bridge Loan being issued ("November 15 E-mail Chain").
Brennerman Dec. ¶ 20; Ex. 3.

   **Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence
demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion
to Dismiss, Statement of Facts, Section B.

  57. Brennerman, the Chairman and CEO of Blacksands and Manager of Alpha
Blue, was blind-copied on the November 15 E-mail Chain by the sender of the top e-mail,
Julian Madgett. Madgett copied Brennerman on his communication to Plaintiff's attorney
(Jones Day), in which Madgett instructed Jones Day on how to draft the RCF and Bridge
Loan agreements between Plaintiff and Blacksands and Alpha Blue, because the parties had
already reached agreement that the Bridge Loan and RCF would be issued by Plaintiff to
Blacksands and Alpha Blue, and what would be the essential terms of those loans; only the
drafting of the agreements conforming to those terms was necessary before the loans could be
issued. Brennerman Dec. ¶ 21; Ex. 3.

   **Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence
demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion
to Dismiss, Statement of Facts, Section B.

  58. The e-mails in the November 15 E-mail Chain also show that Jones Day
repeatedly asked Madgett whether the Bridge Loan and RCF were linked or were intended to
be stand-alone loans, and that Madgett responded each time by stating that the RCF was
linked to the Bridge Loan and that the documents should be drafted to reflect a single
transaction between Plaintiff and Blacksands and Alpha Blue. Brennerman Dec. ¶ 22; Ex. 3.

**Response**: Disputed. Although Mr. Madgett discussed possible structures for the proposed RCF with ICBC's counsel, nothing in the November 15 e-mail chain demonstrates that the RCF was linked to the Bridge Loan. Mr. Brennerman's contemporaneous correspondence demonstrates that he himself knew the two were not linked. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

59.     On November 13, 2013, at 12:25 p.m. Jones Day e-mailed Madgett to confirm whether he understood correctly that Plaintiff viewed the two loans as independent (emphasis added): "1. [Plaintiff] will *definitely* provide a 90 [day] bridge facility in the amount of $5m as per the terms set out in 'Facility' of the current term sheet . . . 2. *Possible*, ICBC may provide further 5 year money (to be decided at later date) in amount of $70m which would be documented separately from, but rank pari passu with, the MS first lien piece." Brennerman Dec. ¶ 23; Ex. 3 at 7.

**Response**: Undisputed.

60.     Less than an hour later, at 1:04 p.m. Madgett corrected Jones Day, telling him that the Bridge Loan was intended to be refinanced into the RCF, and had been so offered to Blacksands and Alpha Blue: "The bridge is intended to turn into the separated tranche [i.e., the RCF] at better yield of the first lien capex-opex financing facility as pitched to the client – you were copied in." Brennerman Dec. ¶ 24; Ex. 3 at 6.

**Response**: Disputed. Although the quoted text is contained in the email, the remainder of this statement is false. Mr. Brennerman's contemporaneous correspondence demonstrates that he knows this statement to be a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

61.     On November 14, 2013, Jones Day again asked Madgett if the Bridge Loan and RCF were intended to be stand-alone loans. Brennerman Dec. ¶ 25; Ex. 3 at 4. Madgett replied the next day, November 15, stating that the RCF and Bridge Loan were linked together, part of the same overall credit facility: "A NY law term loan facility agreement . . . [a] bilateral $20m (net $5m) 90 day Bridge to the Parent and then 5 yr part amortised Revolving Credit Facility (RCF) . . . ." Brennerman Dec. ¶ 26; Ex. 3 at 1.

**Response**:  Disputed.  Although Mr. Madgett discussed possible structures for the proposed RCF with ICBC's counsel, nothing in the referenced e-mail chain demonstrates that the RCF was linked to the Bridge Loan.  Mr. Brennerman's contemporaneous correspondence demonstrates that he himself knew the two were not linked.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

62.     The November 15 e-mail from Madgett, the top e-mail in the November 15 E-mail Chain, shows that the parties had reached agreement, including all essential terms, that Plaintiff would issue the Bridge Loan and RCF to Blacksands and Alpha Blue. Brennerman Dec. ¶ 27; Ex. 3 at 1-3.

**Response**:  Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

63.     The stated purpose of the November 15 e-mail from Madgett, and the entire November 15 E-mail Chain, was to apprise Jones Day of the terms of the agreement between Plaintiff and Blacksands and Alpha Blue for the Bridge Loan and RCF so that Jones Day could prepare an estimate of the amount it would charge to draft the necessary documents to effectuate the credit facility agreed to by the parties. Brennerman Dec. ¶ 28; Ex. 3 at 1, 4, 6, 7.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

64.     Plaintiff adopted the term sheet previously exchanged ("Term Sheet") that sets forth the essential terms of the agreement to issue the RCF: the loan size, length of loan, security, interest rate, and use of the loan proceeds. Brennerman Dec. ¶¶ 18-19, 27; Ex. 2; Ex. 3 at 1.

**Response**: Disputed.  The cited "Term Sheet" is a document created by Blacksands, and is labeled "for discussion purposes."  Plaintiff did not adopt the "Term Sheet."  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

65.     The November 15 e-mail also contains instructions for Jones Day regarding the documents that it would have to prepare in order to issue the RCF. Brennerman Dec. ¶ 29; Ex. 3 at 1-3.

**Response**: Disputed.  The November 15 e-mail discusses various possible structures and features of the proposed additional financing.  It does not constitute "instructions" of any sort.

66.     On November 25, 2013, ten days after the November 15 E-mail was sent, the Bridge Loan Agreement was fully drafted by Jones Day, in conformity with the essential terms the Term Sheet and as provided in the November 15 E-mail Chain, and the parties then executed that Agreement. Brennerman Dec. ¶ 30; Ex. 3; Clark Affidavit Ex. A.

**Response**:  Undisputed that the Bridge Loan Agreement was executed by the parties on November 25, 2013 following negotiations between the parties and their counsel. Otherwise disputed.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

67.     Other than the essential terms set forth on the Term Sheet, the provisions of the Bridge Loan Agreement were boilerplate language, i.e., they were not negotiated but were language inserted by Jones Day, Plaintiff's attorney. In particular, Article 9 of the Bridge Loan Agreement, concerning the guaranty, was boilerplate language that was not negotiated by anyone at Blacksands or Alpha Blue. Brennerman Dec. ¶ 31.

**Response**:  Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B. Among other things, Mr. Brennerman identified Troutman Sanders as counsel to the Obligors, and Troutman Sanders and the Obligors negotiated the entirety of the Bridge Loan Agreement.  *Id.*  The Obligors expressly represented in the Bridge Loan Agreement that they were represented by counsel, and that their counsel reviewed and participated in the preparation and negotiation of the Bridge Loan Agreement.  (Bridge Loan Agreement ¶¶ 10.15(a), 1.6).  The Bridge Loan Agreement is the opposite of "boilerplate."

68.     On November 26, 2013, a conference call was held between Plaintiff and Alpha Blue, and their attorneys, regarding the RCF. During that call, Plaintiff confirmed that it was going to issue the RCF, and directed its counsel, Jones Day, to provide a first draft of the RCF agreement by December 6—eleven days after the call. Brennerman Dec. ¶ 32.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

69.    When no draft RCF agreement was forthcoming in December 2013, Blacksands and Alpha Blue asked Plaintiff for a draft of the contract. Plaintiff did not respond to that request. Brennerman Dec. ¶ 33

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

70.    Blacksands and Alpha Blue continued to ask Plaintiff during January 2014 for a draft of the RCF agreement, but Plaintiff did not respond until February. Brennerman Dec. ¶ 34.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

71.    In January 2014, Alpha Blue repaid $10 million of the outstanding amount of the Bridge Loan. Brennerman Dec. ¶ 35.

**Response**: Undisputed.

72.    On February 17, 2014, Goldleaf Jewelry announced that it was purchasing the California oil field at issue in this case. Brennerman Dec. ¶ 36; Ex. 4 (*available at* http://www.bloomberg.com/news/articles/2014-02-17/chinese-gold-retailer-to-pay-665-million-f or-texas-oil-operator (last visited February 4, 2015)).

**Response**: Undisputed.

73.     In February 2014, Plaintiff informed Blacksands and Alpha Blue that Goldleaf Jewelry—which, like Plaintiff, is a Chinese company—was interested in purchasing the California oil field. Plaintiff indicated to Blacksands and Alpha Blue that it therefore might no longer be willing to issue the RCF to Blacksands and Alpha Blue, despite the parties' agreement. Brennerman Dec. ¶ 37.

**Response**:  Disputed.  While Plaintiff was aware of public reports of Goldleaf's reported purchase or interest in purchasing the California oil field, that interest was due solely to the fact that the proposed additional financing was purportedly intended to buy the same asset.  Plaintiff therefore sought an explanation from Defendant as to the effect of that transaction on the Obligors' proposed transaction. *See* Hessler Decl. Exs. 2-7.

74.     Blacksands and Alpha Blue told Plaintiff that Goldleaf's interest wasn't Blacksands' and Alpha Blue's concern, as Blacksands and Alpha Blue had an agreement with Plaintiff for the RCF. Brennerman Dec. ¶ 38.

**Response**:  Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

75.     Plaintiff assured Blacksands and Alpha Blue that it would proceed with the RCF. In reliance on Plaintiff's promise, Blacksands and Alpha Blue did not seek other financing. Blacksands and Alpha Blue, relying on Plaintiff's promise, continued to plan for the closing of the California oil field acquisition that would occur once Plaintiff issued the RCF. Brennerman Dec. ¶ 39.

**Response**: Disputed. Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

76.     Plaintiff, however, did not provide Blacksands and Alpha Blue with a draft of the RCF agreement or take any other steps to issue the credit facility. Brennerman Dec. ¶ 40.

**Response**: Disputed. Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B. Plaintiff repeatedly pursued Obligor with respect to the proposed additional financing, only to be rebuffed by Mr. Brennerman. *See id.*

77.     As February 24, 2014, the original maturity date of the Bridge Loan, approached without Plaintiff issuing the RCF, the parties agreed that the maturity date would be extended so that Plaintiff could issue the RCF, and also so that Blacksands and Alpha Blue would have sufficient time to close on the overall entire capital financing structure for the California oil field acquisition. Plaintiff reiterated its intention to issue the RCF. Brennerman Dec. ¶ 41.

**Response**: Disputed. Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

78.     In April 2014, Bo Jiang, then Deputy Managing Director and acting CEO of Plaintiff, spoke with Brennerman of Blacksands and Alpha Blue multiple times about the RCF. Jiang asked Brennerman to explain the dispute between Plaintiff and Blacksands and Alpha Blue. He also asked if Blacksands and Alpha Blue still wanted the RCF financing; Brennerman said yes. Jiang said he would look into the matter, and in the interim Plaintiff

would extend again the maturity date of the Bridge Loan. In those conversations, Jiang never

mentioned a notice of default sent on April 4, 2014, and Brennerman never received the

document attached as Exhibit D to the Clark Affidavit submitted in support of Plaintiff's

Motion. Brennerman Dec. ¶ 42.

        **Response**: Disputed. Mr. Jiang repeatedly attempted to contact Mr.

Brennerman because of the Obligor's default on the Bridge Loan Agreement. He did not

further extend the maturity date of the Bridge Loan, which could only be done in writing.

Bridge Loan Agreement § 10.2. Mr. Brennerman's statement that he never received the

notice of default faxed to the Obligors is immaterial; Blacksands and the Borrower

acknowledge in their papers that they do not dispute that the notice of default was sent by

ICBC.

       79.     Alpha Blue paid interest on the outstanding amount of the Bridge Loan during

the period of December 2013 through May 2014, relying on Plaintiff's continued promises to

issue the RCF. Brennerman Dec. ¶ 43.

        **Response**: Undisputed that Alpha Blue paid interest on the outstanding

amount of the Bridge Loan during the period of December 2013 through May 2014. Mr.

Brennerman's contemporaneous correspondence demonstrates that the remainder of this

statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement

of Facts, Section B.

       80.     By the end of May 2014, however, Blacksands and Alpha Blue realized that

Plaintiff was never going to issue the RCF despite its agreement to do so, and despite its

promises earlier in 2014 that the RCF would issue. Blacksands and Alpha Blue also realized

that Plaintiff had not intended to issue the RCF since at least when Plaintiff raised the

potential Goldleaf Jewelry acquisition of the oil field with Blacksands and Alpha Blue, but likely before then. Plaintiff took no steps to issue the RCF at any point in 2014, despite its promises to do so. Instead, Plaintiff had determined it would not issue the RCF, but made promises to do so while Alpha Blue continued paying interest on the outstanding amount of the Bridge Loan. Brennerman Dec. ¶ 44.

   **Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

  81. Because the capital financing structure that Blacksands and Alpha Blue had developed required that all of the components of the structure be issued in order for the California oil field acquisition to close, Plaintiff's failure to issue the RCF caused the entire capital structure to collapse, preventing Blacksands and Alpha Blue from acquiring the oil field in the first half of 2014. Brennerman Dec. ¶ 45.

   **Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

  82. Blacksands and Alpha Blue therefore began to search for replacement financing for their acquisition of the California oil field. Brennerman Dec. ¶ 46.

   **Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

  83. In June 2014, Jiang and Brennerman spoke again regarding the RCF. Brennerman told Jiang that it was apparent Plaintiff did not intend to issue the RCF, so

Blacksands and Alpha Blue had begun to search for replacement financing. Brennerman also told Jiang that Blacksands and Alpha Blue had incurred substantial costs as a result of Plaintiff's delay in issuing the RCF. Jiang told Brennerman that he understood Blacksands' and Alpha Blue's position, and that Plaintiff would extend the Bridge Loan's maturity date and waive any further payments of interest by Alpha Blue on the outstanding loan amount, and that Alpha Blue would not have to repay the outstanding amount of the Bridge Loan until Blacksands and Alpha Blue developed and closed on a new capital financing structure for the oil field acquisition. Brennerman Dec. ¶ 47.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

84.     Blacksands and Alpha Blue were able to develop an alternative capital financing structure by the beginning of December 2014. That new capital structure has not closed yet, but is expected to close soon. Brennerman Dec. ¶ 48.

**Response**: Plaintiff lacks knowledge and information sufficient to form a belief as to the truth of this statement.  Plaintiff does not dispute it for purposes of this summary judgment motion, but reserves all rights to challenge this statement should summary judgment be denied.

85.     In reliance on Plaintiff's agreement to issue the RCF, and its assurances thereafter to Blacksands and Alpha Blue that the RCF would be issued despite the delay, Alpha Blue did not repay the outstanding principal amount of the Bridge Loan, as Blacksands and Alpha Blue continued until May 2014 to expect that the remaining Bridge Loan amount would be refinanced into the RCF. Brennerman Dec. ¶ 49.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

86.   In reliance on Plaintiff's agreement to issue the RCF, and its promise thereafter to Blacksands and Alpha Blue that the RCF would be issued despite the delay, Alpha Blue was induced to continue paying interest on the outstanding amount of the Bridge Loan. Brennerman Dec. ¶ 50.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

87.   Blacksands and Alpha Blue also relied on the promise made by Bo Jiang, then acting CEO of Plaintiff, that the Bridge Loan did not need to be repaid—and further interest payments were waived—until after Blacksands and Alpha Blue developed a new capital financing structure to acquire the California oil field. Brennerman Dec. ¶ 51.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

88.   Plaintiff's failure to issue the RCF has materially impeded Blacksands' and Alpha Blue's ability to close on their acquisition of the California oil field. Brennerman Dec. ¶ 54.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

89.     Blacksands' and Alpha Blue's ability to close on that acquisition depends on them obtaining the requisite financing. Brennerman Dec. ¶¶ 16-17, 45-46, 48, 54.

**Response**: Plaintiff lacks knowledge and information sufficient to form a belief as to the truth of this statement.  Plaintiff does not dispute it for purposes of this summary judgment motion, but reserves all rights to challenge this statement should summary judgment be denied.

90.     As a result of the negotiations with Plaintiff, Blacksands and Alpha Blue ultimately created a capital financing structure that involved Alpha Blue assuming, as a first lien, a Bank Beal $350 million credit facility that had been issued to the current owner of the California oil field; Plaintiff providing the $70 million RCF; and Brova Consultadoria de Gestão, Unipessoal, Lda. providing a $275 Million second lien facility. Brennerman Dec. ¶ 53.

**Response**:  Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

91.     Blacksands and Alpha Blue were ready to proceed with the assumption of the $350 Million first lien and the $275 Million second lien financing was committed, but Plaintiff's failure to issue the RCF caused the collapse of the capital financing structure. The collapse of that structure caused Blacksands and Alpha Blue to incur significant costs while they developed new financing to enable them to proceed with the acquisition of the California oil field. Brennerman Dec. ¶ 54.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

92.     As a result of Plaintiff's breach of the agreement to issue the RCF and its misrepresentations to Blacksands and Alpha Blue of its intention to issue the RCF, Blacksands and Alpha Blue have been damaged in the amount of at least $50 million. Brennerman Dec. ¶ 55.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

93.     That damage includes a substantial percentage, if not all, of the $500,000 fee charged by Plaintiff to issue the Bridge Loan to Alpha Blue. This fee was higher than would have paid for a stand-alone loan in the amount of the Bridge Loan; the fee was set at a high amount because Plaintiff also was going to issue the RCF. Brennerman Dec. ¶ 56.

**Response**: Disputed.  Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood.  *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

94.     That damages includes $520,662.51, the total amount of the expenses that Blacksands and Alpha Blue incurred in preparing the necessary paperwork and performing the requisite field work that had to be done in order to close on the deal to acquire the oil field using the capital financing structure that was supposed to include the RCF, and that Blacksands and Alpha Blue have incurred or will incur to re-do that work to close now on the oil field acquisition. That work must be redone when Blacksands and Alpha Blue close on the

oil field acquisition using their new capital financing structure, as there have been significant changes to the oil field since the date that Blacksands and Alpha Blue were ready to close on the deal using the capital financing structure that was supposed to include the RCF. Brennerman Dec. ¶ 57.

**Response**: Disputed. Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

95. That damage includes $377,837.80, the total amount of interest payments made on the outstanding amount of the Bridge Loan from December 2013 through May 2014. Brennerman Dec. ¶ 58.

**Response**: Disputed. Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

96. That damage includes $84,450.00, the amount of legal fees that Blacksands and Alpha Blue paid to Jones Day for the drafting the Bridge Loan Agreement. Brennerman Dec. ¶ 59.

**Response**: Disputed. Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

97. Those damages includes at least $50 million in Blacksands' and Alpha Blue's lost profits. During the negotiations with Plaintiff, Blacksands and Alpha Blue shared with Plaintiff a revenue analysis of the California oil field, which estimated that the profits in the year after a May 2014 closing would be well in excess of $50 million. Had Plaintiff issued the

RCF, Blacksands and Alpha Blue could have closed on the oil field acquisition by May 2014. The collapse of the capital financing structure that was supposed to include the RCF prevented Blacksands and Alpha Blue from acquiring the oil field by May 2014. Although Blacksands and Alpha Blue soon will close on the acquisition of the oil field, they have forever lost the profits that would have been earned if Plaintiff had fulfilled its promise to issue the RCF, thus permitting Blacksands and Alpha Blue to close on the oil field acquisition by May 2014. Brennerman Dec. ¶ 60.

**Response**: Disputed. Mr. Brennerman's contemporaneous correspondence demonstrates that this statement is a falsehood. *See* Hessler Decl. Exs. 2-7; *see also* Motion to Dismiss, Statement of Facts, Section B.

Dated:   New York, New York
         February 13, 2015

                              Linklaters LLP

                              By: _____
                                   Paul S. Hessler
                                   Charles T. Pollak
                              1345 Avenue of the Americas
                              New York, NY 10105
                              (212) 903-9000
                              (212) 903-9100 (Fax)


                              *Attorneys for Plaintiff and Counterclaim-Defendant
                              ICBC (London) plc*