UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

| | |
|---|---|
| ICBC (LONDON) PLC, | : 15 Civ. 0070 (LAK) (FM) |
| Plaintiff, | : |
| -against- | : |
| THE BLACKSANDS PACIFIC GROUP, INC., | : |
| Defendant. | : |

-----------------------------------------------------------------------X

THE BLACKSANDS PACIFIC GROUP, INC. and
BLACKSANDS PACIFIC ALPHA BLUE, LLC,

                Counter-Plaintiffs,

      -against-

ICBC (LONDON) PLC,

                Counter-Defendant.

-----------------------------------------------------------------------X


THE BLACKSANDS PACIFIC GROUP, INC. AND BLACKSANDS
PACIFIC ALPHA BLUE, LLC'S MEMORANDUM OF LAW IN OPPOSITION
TO ICBC (LONDON) PLC'S MOTION TO DISMISS COUNTERCLAIMS



KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600
Attorneys for Defendant and Counter-Plaintiffs

*Table of Contents*

*Page*

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    The Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Deadline Extended . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Damage Caused by Plaintiff's Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Legal Standard on this Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I      COUNTER-PLAINTIFFS HAVE ADEQUATELY
              ALLEGED EXISTENCE AND BREACH OF
              PRELIMINARY AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           A.    Plausible Type II Agreement, Which Plaintiff Breached . . . . . . . . . . . . . 8

           B.    Alpha Blue and Blacksands Performed . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           C.    Statute of Frauds Does Not Apply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

           D.    Alpha Blue and Blacksands Adequately
                Alleged Type I Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    II     PROMISSORY ESTOPPEL ADEQUATELY PLEADED . . . . . . . . . . . . . . . . . 16

    III   UNJUST ENRICHMENT CLAIM ADEQUATELY PLEADED . . . . . . . . . . . 18

    IV   FRAUDULENT MISREPRESENTATION
              ADEQUATELY PLEADED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Table of Authorities*

*Cases*                                                                 *Page(s)*

*720 Lex Acquisition LLC v. Guess? Retail, Inc.*,
    No. 09 CIV 7199 (DAB), 2011 WL 5039780
    (S.D.N.Y. Oct. 21, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*,
    949 F. Supp. 2d 486 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Brown v. Cara*,
    420 F.3d 148 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Faulkner v. Beer*,
    463 F.3d 130 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Friedl v. City of N.Y.*,
    210 F.3d 79 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gas Natural, Inc. v. Iberdrola, S.A.*,
    33 F. Supp. 3d 373 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Global Network Comm., Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

*In re OSG Securities Litig.*,
    12 F.Supp.3d 622 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Page(s)*

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
   62 F.3d 69 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*N.Y. Dist. Council of Carpenters Pension Funds v. Forde*,
   939 F. Supp. 2d 268 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Network Enters., Inc. v. APBA Offshore Prods., Inc.*,
   427 F. Supp. 2d 463 (S.D.N.Y. 2006),
   *aff'd* 264 Fed. Appx. 36 (2d Cir. Feb. 11, 2008) . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12


*Statutes and Other Authorities*

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Time and again, Plaintiff's motion to dismiss erroneously assumes that the bridge loan agreement among the parties ("the Bridge Loan Agreement") forecloses the possibility of any claims arising from Plaintiff's broader agreement to negotiate in good faith for, and ultimately provide, a revolving credit facility (the "RCF") to counter-plaintiffs Blacksands Pacific Alpha Blue LLC ("Alpha Blue")[1] and defendant/counter-plaintiff The Blacksands Pacific Group Inc. ("Blacksands").  But the initial validity of the Bridge Loan Agreement, which Alpha Blue and Blacksands do not dispute, does not override -- in fact, it supports -- the Counterclaims Plaintiff wrongly seeks to dismiss on this motion.  Moreover, nothing in the Bridge Loan Agreement precludes the borrower -- Alpha Blue -- from seeking relief for Plaintiff's bad faith tactics after the parties entered into that Bridge Loan Agreement.

In its moving papers, Plaintiff admits that the Bridge Loan Agreement itself contains a Type II preliminary agreement obligating Plaintiff to negotiate the RCF in good faith.  And the factual allegations in the Counterclaims further support that agreement and Plaintiff's breach of that agreement, as well as the existence and Plaintiff's breach of a binding Type I preliminary agreement among the parties to enter into the RCF.

Similarly, the alternatively-pleaded Counterclaims, for promissory estoppel, unjust enrichment, and fraudulent misrepresentation, are all adequately set forth and cannot be overcome by Plaintiff's red-herring references to the Bridge Loan Agreement or the variety of inapposite legal doctrines Plaintiff shuffles through in its moving brief.  Further, Plaintiff misstates the allegations in the Counterclaims, points to propositions of law that do not apply to

---

[1] Alpha Blue, though not named a defendant in Plaintiff's complaint, has joined Blacksands as a counter-plaintiff.

the facts as alleged and proffers extraneous materials that are neither incorporated by reference in, nor integral to, the Counterclaims.

In other words, Plaintiff fails to establish its entitlement to dismissal of the Counterclaims under Rule 12(b)(6).  Plaintiff's motion to dismiss the Counterclaims, and its bid to escape responsibility for misleading its customers and enriching itself at their expense, should be denied.

### Facts

In 2013, Plaintiff began negotiating with Alpha Blue and Blacksands to issue a credit facility that would be part of the financing that would enable Alpha Blue to purchase and develop an oil field in California.  *See* Exhibit 1 to February 13, 2015 Declaration of Paul S. Hessler ("Counterclaims") ¶ 12.

### The Agreements

Plaintiff ultimately agreed to issue a $70 million first lien pari passu revolving credit facility -- the RCF -- to Alpha Blue and Blacksands that included a $20 million bridge loan ("Bridge Loan") that would be made to Alpha Blue during the period before the RCF was issued and would then be rolled into the RCF.  *Id.* ¶ 13.  The parties agreed to the size, length, security, interest rate, and use of the proceeds of the RCF.  *Id.* ¶¶ 30, 68.  They also agreed that the RCF would carry a substantially lower rate of interest than the Bridge Loan, the Bridge Loan amount would be refinanced into the RCF at the RCF's lower rate of interest, and the RCF would be issued within 90 days after the Bridge Loan.  *Id.* ¶¶ 14-15, 84-85.  Alpha Blue and Blacksands relied on Plaintiff's promises regarding the RCF in agreeing to the Bridge Loan.  *Id.* ¶¶ 18-19.

That agreement is reflected in communications between the parties and between Plaintiff and its counsel, Jones Day.  *Id.* ¶¶ 16, 22-31, 68.  In an e-mail chain in which Plaintiff and Jones

Day discussed the latter's fee for drafting the Bridge Loan and RCF agreements, Plaintiff acknowledged the parties' agreement to issue the RCF and its essential terms. *Id.* ¶¶ 22-31. As Plaintiff described it, the agreement with Alpha Blue and Blacksands was for "[a] NY law term loan facility agreement . . . [a] bilateral $20m (net $5m) 90 day Bridge to the Parent and then 5 yr part amortised Revolving Credit Facility (RCF) . . . ." *Id.* ¶ 27. Plaintiff's agreement to issue the two loans is further reflected by the fact that Plaintiff blind-copied the CEO of Blacksands and Manager of Alpha Blue on that e-mail chain between Plaintiff and Jones Day. *Id.* ¶ 23.

On November 25, 2013, ten days after the November 15 e-mail was sent, the parties executed the Bridge Loan Agreement. *Id.* ¶ 32. As Plaintiff states multiple times in its memorandum of law, § 10.11 of the Bridge Loan Agreement provides that the parties, "agree to enter into and continue good faith negotiations of additional financing arrangements . . . as described more fully in [the] letter of confirmation . . . together with the term sheet referred to therein . . . ." On November 26, 2013, in a conference call held between the parties, Plaintiff directed Jones Day to begin drafting the RCF agreement, with a first draft due in eleven days. *Id.* ¶ 34.

Despite its agreement with Alpha Blue and Blacksands to issue the RCF, Plaintiff never provided the promised draft RCF agreement. *Id.* ¶¶ 35-48, 51. Alpha Blue and Blacksands made repeated requests for that draft agreement, to no avail. *Id.* ¶¶ 35-36, 45-46.

On February 17, 2014, Goldleaf Jewelry announced that it was purchasing the California oil field at issue in this case. *Id.* ¶ 38. In February 2014, Plaintiff informed Alpha Blue and Blacksands that Goldleaf Jewelry -- which, like Plaintiff, is a Chinese company -- was interested in purchasing the California oil field. *Id.* ¶ 39. Plaintiff indicated to Alpha Blue and Blacksands

3

that it therefore might no longer be willing to issue the RCF to Alpha Blue and Blacksands, despite the parties' agreement.  *Id.* ¶ 40.  Alpha Blue and Blacksands told Plaintiff that Goldleaf Jewelry's interest wasn't a concern, as Plaintiff had an agreement with Alpha Blue and Blacksands for the RCF.  *Id.* ¶ 41.  Plaintiff then assured Alpha Blue and Blacksands that it would proceed with the RCF.  *Id.* ¶ 42.  In reliance on Plaintiff's promise, Alpha Blue and Blacksands continued to plan for the closing of the California oil field acquisition that would occur once Plaintiff issued the RCF.  *Id.* ¶ 43.  Plaintiff, however, did not provide Alpha Blue and Blacksands with a draft of the RCF agreement or take any other steps to issue the credit facility.  *Id.* ¶ 44.

**<u>Deadline Extended</u>**

As the Bridge Loan's February 24, 2014 maturity date approached without Plaintiff issuing the RCF, the parties agreed to extend that deadline so that Plaintiff could issue the RCF, and also so that Alpha Blue and Blacksands would have sufficient time to close on the overall capital financing structure for the California oil field acquisition.  *Id.* ¶ 45.  Plaintiff reiterated its intention to issue the RCF.  *Id.*

When Bo Jiang, then Deputy Managing Director and acting CEO of Plaintiff, asked in April 2014 whether Alpha Blue and Blacksands still wanted the RCF financing, they said yes. *Id.* ¶ 46.  Jiang said he would look into the matter, and in the interim Plaintiff would extend again the maturity date of the Bridge Loan.  *Id.*  Alpha Blue paid interest on the outstanding amount of the Bridge Loan during the period of December 2013 through May 2014, relying on Plaintiff's continued promises to issue the RCF.  *Id.* ¶¶ 47, 53-54.

By the end of May 2014, however, Alpha Blue and Blacksands realized that Plaintiff was

4

never going to issue the RCF, despite its agreement to do so.  *Id.* ¶ 48.  Plaintiff took no steps to

issue the RCF at any point in 2014, despite its promises to do so.  *Id.*  Instead, Plaintiff had

determined it would not issue the RCF, but made promises to do so while Alpha Blue continued

paying interest on the outstanding amount of the Bridge Loan.  *Id.*

**Damage Caused by Plaintiff's Conduct**

Alpha Blue and Blacksands had developed a three-part capital financing structure for the

acquisition and development of the California oil field: (i) a $350 million first lien through

another source; (ii) the $70 million RCF offered by Plaintiff; and (iii) a $275 million second lien

credit facility through another source.  *Id.* ¶¶ 20, 58.  Plaintiff was aware that Alpha Blue and

Blacksands had designed a capital financing structure for the acquisition and development of the

California oil field, and Plaintiff knew, or it was at least foreseeable to Plaintiff, that the

acquisition and development could not go forward if Plaintiff did not fulfill its promise to issue

the RCF.  *Id.* ¶¶ 21, 77.

Plaintiff's failure to issue the RCF caused the collapse of that financing structure and

prevented Alpha Blue and Blacksands from acquiring and developing the oil field in the first half

of 2014, even though Alpha Blue and Blacksands were otherwise ready to proceed with the

assumption of the $350 Million first lien and the $275 Million second lien financing.  *Id.* ¶¶ 49,

56-57, 59.  The collapse of that structure caused Alpha Blue and Blacksands to incur significant

costs while they developed new financing to enable them to proceed with the acquisition of the

California oil field.  *Id.* ¶ 59. The damage Plaintiff's conduct caused to Alpha Blue and

Blacksands includes: (a) a substantial portion of the $500,000 fee charged by Plaintiff for the

issuance of the Bridge Loan, which was set at a level higher than would be paid for a stand-alone

5

loan because Plaintiff also was going to issue the RCF *(Id.* ¶ 61); (b) $520,662.51 in necessary expenses incurred preparing for the acquisition of the oil field using the capital structure that was supposed to include the RCF *(Id.* ¶ 62); (c) $377,837.80 in interest paid on the outstanding amount of the Bridge Loan from December 2013 through May 2014 *(Id.*¶ 63); (d) $84,450.00 in legal fees that Alpha Blue and Blacksands paid to Jones Day for the drafting the Bridge Loan Agreement *(Id.* ¶ 64); and (e) the millions of dollars in profits Alpha Blue would have realized had it been able to acquire and develop the oil field by May 2014. *Id.* ¶ 65.

## Argument

Plaintiff seeks to squeeze the larger dispute about a $70 million RCF for Alpha Blue into the smaller box of Blacksands' guaranty of the $5 million loan intended by all parties to be a bridge to that larger financial facility.  On its motion to dismiss, Plaintiff attempts to brush off the Counterclaims by repeatedly pointing to the Bridge Loan Agreement as some sort of trump card that absolves it of living up to its other obligations to Alpha Blue and Blacksands.  But, as shown by the allegations in support of the Counterclaims, this dispute is not merely a question of whether and when Blacksands -- as guarantor -- is required to repay the principal and interest on the Bridge Loan Agreement.  Rather, it is a question of whether or not Plaintiff can break its agreements with Alpha Blue and Blacksands[2] -- to issue the RCF, or at the very least, as Plaintiff itself admits, to negotiate the RCF in good faith -- with impunity.

---

[2]  Plaintiff argues in its motion for summary judgment, though not here, that Blacksands' defenses and claims may be barred by the waiver language in the Bridge Loan Agreement. Besides the reasons set forth in Blacksands' opposition to the motion for summary judgment as to why that waiver does not bar Blacksands' claims and defenses, § 9.2 of the Bridge Loan Agreement applies only to Blacksands and is inapplicable to Alpha Blue.

## **Legal Standard on this Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).  The Court must take all of the factual allegations in the complaint as true, but is "not bound to accept as true a legal conclusion couched as a factual allegation." 556 U.S. at 678, 129 S.Ct. at 1949-50.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." 556 U.S. at 679, 129 S.Ct. at 1950.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* This "facial plausibility" prong requires the plaintiff to plead facts "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678, 129 S.Ct. at 1949.

The Counterclaims contain well-pleaded allegations of fact that, assuming their veracity, allow the Court to draw the reasonable inference that Plaintiff is liable for the misconduct alleged.

## **I**

## **COUNTER-PLAINTIFFS HAVE ADEQUATELY ALLEGED EXISTENCE AND BREACH OF PRELIMINARY AGREEMENT**

Plaintiff's argument that Alpha Blue and Blacksands have alleged breach of neither a Type I nor a Type II binding preliminary agreement is wrong on both counts.  As Plaintiff admits, the Bridge Loan Agreement itself memorializes an agreement among the parties to negotiate the RCF in good faith -- that is, it sets forth in writing a Type II agreement to negotiate.  Plaintiff's

motion to dismiss the breach of preliminary agreement claim fails because the Counterclaims include more than adequate allegations of Plaintiff's bad faith (which is, as stated below, a factual inquiry that courts generally do not address on motions to dismiss) and Alpha Blue and Blacksands's own good faith and performance of the agreement.  But Alpha Blue and Blacksands have also adequately alleged a binding promise by Plaintiff to issue the RCF, complete with ample facts supporting agreement upon material terms.  There is no dispute that Plaintiff never issued the RCF.  For these reasons, the breach of preliminary agreement cause of action also contains allegations sufficient to support a breach of a binding Type I agreement by Plaintiff to actually issue the RCF.

A.      **Plausible Type II Agreement, Which Plaintiff Breached**

Plaintiff concedes that the Counterclaims allege a "plausible promise" to enter into "negotiations regarding the potential additional financing."  Pl. Br. at 16.  Three times Plaintiff admits it was obligated (not least of all pursuant to § 10.11 of the Bridge Loan Agreement) "to enter into and continue good faith negotiations of additional financing arrangements" as described more fully in other documents, including a term sheet previously exchanged between the parties.  *See* Pl. Br at 3, 11, 22.  In other words, it is undisputed that the parties entered into a Type II preliminary agreement, which "creates an obligation to negotiate . . . open issues in good faith in an attempt to reach the ultimate contractual agreement within the agreed framework." *Network Enters., Inc. v. APBA Offshore Prods., Inc.*, 427 F. Supp. 2d 463, 482 (S.D.N.Y. 2006), *aff'd* 264 Fed. Appx. 36 (2d Cir. Feb. 11, 2008) (quotation omitted).

While apparently not disputing the existence of a Type II agreement to negotiate in good faith, Plaintiff points to, without explaining its supposed significance, language in a November

14, 2013 letter giving it "sole discretion" to determine whether to approve the RCF or not.  But this language does not bear on the dispute here.  It merely reinforces that Plaintiff, like any party to a Type II agreement, was not ultimately obligated to conclude the agreement being negotiated if the parties could not finalize the agreement under the parameters they had already set, so long as it negotiated in good faith.

Rather than mount any challenge to the existence of a Type II agreement, Plaintiff instead seeks dismissal based on the incorrect assertion that the counterclaim does not allege a failure to negotiate in good faith beyond alleging that the RCF was not concluded.

Plaintiff's argument that "it is more plausible that Blacksands" would have drafted the RCF Agreement (Pl. Br. at 11, n.7) ignores the specific factual allegations in the Counterclaims that Plaintiff instructed its lawyers in writing on November 15, 2013 to draft that agreement and shared those written instructions with Alpha Blue and Blacksands.  Counterclaims, ¶¶ 23, 27-31. The parties had agreed that Plaintiff's counsel would draft the agreement, and producing the draft RCF agreement was the next step in Plaintiff's undeniable obligation to negotiate in good faith.

Plaintiff's failure to produce that draft, along with its general unresponsiveness to Blacksands' and Alpha Blue's requests to move the process forward, are more than sufficient to nudge their allegations of Plaintiff's bad faith from merely conceivable to plausible.  Plaintiff's admission that "the question of whether a party acted in good faith 'typically is not suitable for resolution on a motion to dismiss'"[3] further undercuts its argument that Alpha Blue and Blacksands did not adequately allege Plaintiff's breach of its duty to negotiate in good faith.  On

---

[3]  Pl. Br. at 11 n.8, *quoting Gas Natural, Inc. v. Iberdrola, S.A.*, 33 F. Supp. 3d 373, 383 (S.D.N.Y. 2014).

9

the allegations before it, this Court cannot yet rule on Plaintiff's good faith (or lack thereof).

Moreover, the Counterclaims allege that Plaintiff told Alpha Blue and Blacksands in February 2014 that it might not want to conclude the RCF because Goldleaf Jewelry -- like Plaintiff, a Chinese company -- was interested in buying the California oil field.  Counterclaims, ¶¶ 38-40, 48.  While Plaintiff offers a competing explanation for its discussion of Goldleaf Jewelry in its reply papers on its motion for summary judgment in lieu of complaint, it does not address this issue on this motion, and, in any event, doing so would only create competing factual allegations that must be investigated during discovery.

**B.      Alpha Blue and Blacksands Performed**

Plaintiff's attempt to argue that Alpha Blue and Blacksands did not themselves perform the agreement by negotiating in good faith is unavailing.  The Counterclaims specifically allege that Alpha Blue and Blacksands repeatedly tried to engage Plaintiff to, as Plaintiff had promised, provide a draft RCF agreement, the next step in concluding the RCF, and that Plaintiff repeatedly failed to do so.  Counterclaims, ¶¶ 34-36, 41-44.

Plaintiff improperly seeks to introduce a few cherry-picked e-mails and a declaration submitted in another case by a non-party to this action alleging facts immaterial to this lawsuit to suggest a competing version of the facts.  These extraneous documents are not appropriately submitted in support of a motion to dismiss.  *See e.g.*, *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *Global Network Comm., Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006); *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000).  Discovery is required to develop the full factual record, and the parties have not yet had the opportunity to engage in that fact-intensive process.  As the Second Circuit stated in *Global Network*.

10

> The purpose of Rule 12(b)(6) is to test, in a streamlined fashion,
> the formal sufficiency of the plaintiff's statement of a claim for
> relief *without* resolving a contest regarding the substantive merits.
> The Rule thus assesses the legal feasibility of the complaint, but
> does not weigh the evidence that might be offered to support it.
>
>     \*  \*  \*
>
> The streamlined testing of the substantive merits, on the other
> hand, is more appropriately reserved for the summary judgment
> procedure, governed by Rule 56, where both parties may "conduct
> appropriate discovery and submit the additional supporting
> material contemplated by" that rule.
>
>     \*  \*  \*
>
> Determining the summary judgment motion is fact-intensive. It is
> the proper procedural device to consider matters outside the
> pleadings, such as facts unearthed in discovery, depositions,
> affidavits, statements, and any other relevant form of evidence.

*Global Network Comm., Inc. v. City of New York*, 458 F.3d at 155 (2d Cir. 2006) (emphasis in original).

Plaintiff brings this motion as one to dismiss under Fed. R. Civ. P. 12(b)(6), not for summary judgment under Rule 56. As Alpha Blue and Blacksands understand it, Plaintiff proffers a scattered selection of e-mails as part of the 12(b)(6) motion because Plaintiff contends those documents are referenced in, or are integral to, the Counterclaim, and that Counter-claimants had notice of them. Pl. Br. at 8-9. But Plaintiff misapprehends the rule.

> The complaint is deemed to include any written instrument
> attached to it as an exhibit or any statements or documents
> incorporated in it by reference. . . .  Moreover, when a plaintiff
> chooses not to attach to the complaint or incorporate by reference a
> document *upon which it solely relies and* which is integral to the
> complaint, the court may nevertheless take the document into
> consideration in deciding the defendant's motion to dismiss,
> without converting the proceeding to one for summary judgment.

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (emphasis added; internal quotation marks and citations omitted).  "Because this standard has been misinterpreted on occasion," the Second Circuit reiterated "that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original). Moreover, to consider a document integral to the complaint on a motion to dismiss, "'[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010), *quoting Faulkner*, 463 F.3d at 134.

A document is "integral" to the complaint, "where the complaint relies heavily upon its terms and effect." *Chambers*, 282 F.3d at 153 (internal quotation omitted). *See e.g.*, *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007) ("Defendants' submissions of their Schedule 13D filings thus presented material that was inappropriate for consideration on Rule 12(b)(6) motions to dismiss a § 16(b) complaint that contained no allegations of a failure to disclose or of a factual misrepresentation."); *Global Network Comm., Inc.*, 458 F.3d at 156 ("Massie's testimony as a government witness in an unrelated criminal proceeding was neither mentioned nor relied upon by appellant in drafting its complaint.  And, the complaint's reference to Massie's guilty pleas cannot open the door to the content of his testimony proffered in exchange for the pleas, as the nexus between the two is too attenuated to render that testimony integral to the complaint."); *N.Y. Dist. Council of Carpenters Pension Funds v. Forde*, 939 F. Supp. 2d 268, 277 (S.D.N.Y. 2013) ("The actual settlement Agreement and satisfaction of Judgment are not specifically referenced in

12

the Complaint . . . .   Although [defendant] may be correct that these documents are part of litigation involving the same factual underpinnings of this case . . . Plaintiffs have not made any reference to the terms and effects of these documents in their allegations [and therefore are not integral to the complaint])."

Beyond the Counterclaims themselves attached as Exhibit 1, the Hessler Declaration proffers no document incorporated by reference in, or integral to, the Counterclaims.  For example, paragraphs 22 through 31 of the Counterclaims describe a series of e-mails between Plaintiff and its attorneys at Jones Day that instruct Plaintiff's lawyers to draft the RCF agreement and set forth the terms that are to be included in that contract.  Plaintiff chose not to attach those e-mails -- or any document relied upon in drafting the Counterclaims -- to its motion to dismiss.

Rather than offer documents heavily relied upon by Alpha Blue and Blacksands, Plaintiff offers e-mails that are neither referenced in, nor are integral to, the drafting of the Counterclaims. Plaintiff, which concedes the plausibility of the parties' promise to enter into good faith negotiations of a potential RCF, does not contend that any of the e-mails it offers embodies the parties' agreement referenced in the Counterclaims.  *See also Chambers*, 282 F.3d at 153-54 (finding integral to complaint contracts addressing royalties for the recordings that were the subject of the litigation).  Nor does Plaintiff identify any of the e-mails as a statement by Plaintiff which Blacksands or Alpha Blue allegedly relied on for a fraud claim. *See also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991) (offering memorandum and stock purchase agreement that contain the statements that are the basis of misrepresentation complaint deemed appropriate for submission on a Rule 12(b)(6) motion).

13

Alpha Blue and Blacksands dispute the relevance of those documents to the motion to dismiss.  The mere fact that the parties, while attempting to conclude the RCF, may have discussed increasing the amount Plaintiff would lend Alpha Blue does not invalidate the binding Type II agreement between the parties.  "Negotiating outside of that [proposed framework] did not discharge [the] duty to negotiate within it as well."  *Network Enters., Inc. v. APBA Offshore Prods., Inc.*, 264 Fed. Appx. 36, 39 (2d Cir. Feb. 11, 2008).  The documents submitted by Plaintiff do not show any abandonment of the parameters of the Type II agreement or any refusal to negotiate by Alpha Blue and Blacksands for an RCF from Plaintiff.  Rather, they show that Alpha Blue and Blacksands remained committed to obtaining financing from Plaintiff.  The fact that the parties discussed for a period of time a possible alternative that would have varied one of the terms of the arrangement originally discussed does not vitiate the existing agreement to negotiate the RCF.

Therefore, the Court should not consider Exhibits 2 through 8[4] to the Hessler Declaration on Plainitff's Rule 12(b)(6) motion.

**C.**     **Statute of Frauds Does Not Apply**

Plaintiff's arguments about the Statute of Frauds are inapplicable.  The Statute of Frauds does not bar enforcement of the Type II preliminary agreement alleged here.  *See Brown v. Cara*, 420 F.3d 148, 159 (2d Cir. 2005).  There is nothing that renders the Type II agreement alleged in

---

[4]  Exhibit 8 to the Hessler Declaration also has no place in a Rule 12(b)(6) motion. That declaration by a non-party filed in an unrelated case referring to an irrelevant subject matter appears to be an improper attempt to inject issues of general credibility into a Rule 12(b)(6) motion.  *See In re OSG Securities Litig.*, 12 F.Supp.3d 622, 632 (S.D.N.Y. 2014) ("Because . . . plaintiffs' factual allegations [are presumed] to be true on a motion to dismiss, any question of credibility regarding the . . . allegations is irrelevant at this stage").

14

the Counterclaims incapable of being performed within a year of its making.  To the contrary, the parties contemplated that they would negotiate the RCF within 90 days of signing the Bridge Loan Agreement.

Plaintiff's partial performance argument, in addition to having no bearing on the Type II agreement, misapprehends the significance of Alpha Blue's and Blacksands's entering into and making of interest payments pursuant to the Bridge Loan Agreement and, by extension, how that conduct was "unequivocally referrable" to the parties' agreement to enter into the RCF.  Alpha Blue and Blacksands concluded the Bridge Loan Agreement with Plaintiff (which contained, among other things, a 90-day term, much shorter than that offered by the other lender offering Alpha Blue and Blacksands a bridge loan) as part of an overall finance structure that contemplated, among other things, refinance of the Bridge Loan into the RCF promised by Plaintiff.  Counterclaims, ¶¶ 11-15, 18-20, 27.  Absent Plaintiff's promise to enter into the RCF, there was no reason for Alpha Blue and Blacksands to conclude the Bridge Loan, with its much shorter term than that offered by the other prospective bridge lender, with Plaintiff.

D.      **Alpha Blue and Blacksands Adequately Alleged Type I Agreement**

The "hallmark" of a binding Type I preliminary agreement "is that the parties have agreed to all necessary elements of the contract and are, therefore, bound" even before the agreement is formalized in writing.  *Brown*, 420 F.3d at 154.  Beyond the parties' agreement to negotiate the RCF in good faith, the parties intended and agreed to be bound to enter into the RCF.

Plaintiff conflates the parties' dispute over repayment of the Bridge Loan with the parties' agreement for Plaintiff to provide the RCF.  While the Bridge Loan Agreement does contain a maturity date and an integration clause for that particular piece of the parties' financing

arrangements, that is, the Bridge Loan, this is not relevant to the parties' agreement for Plaintiff to provide additional financing in the form of the RCF.  As shown in the November 2013 term sheet and the November 15, 2013 e-mail chain between Plaintiff and Jones Day, the parties agreed upon the material terms of the RCF, including amount, interest rate, time period, security, and purpose of the loan.  As Plaintiff admits, the Bridge Loan Agreement itself binds the parties to cooperate in papering the RCF.  Nothing in the Bridge Loan Agreement undercuts or refutes the terms that the parties had agreed upon with respect to the RCF.  And nothing in the Bridge Loan Agreement, the validity of which Alpha Blue and Blacksands do not dispute, undercuts the allegations in the Counterclaims regarding Blacksands' and Alpha Blue's entry into that agreement based on Plaintiff's binding assurances that it would issue the RCF.  The parties' correspondence indicates that they in fact intended and assumed they were already bound to conclude the RCF.  These facts make out a sufficient claim of a Type I agreement, and the breach of agreement Counterclaim therefore cannot be dismissed.

## II

## PROMISSORY ESTOPPEL ADEQUATELY PLEADED

Plaintiff's attack on Blacksands' and Alpha Blue's alternatively-pleaded promissory estoppel cause of action contradicts itself and ignores the actual allegations of that Counterclaim.

Alpha Blue and Blacksands allege a clear and unambiguous promise by Plaintiff to issue the RCF.  *See* Counterclaims, ¶¶ 13-15.  The October 27, 2013 email between Plaintiff and Blacksands, the November 2013 term sheet, and the November 15, 2013 email between Plaintiff and Jones Day, apprising Plaintiff's attorneys of the terms of the agreement, all support that agreement and establish that the agreement encompassed all material terms necessary to form a

binding Type I agreement. Id. ¶¶ 16, 22-31.  While all of these documents support and reflect Plaintiff's promise, the pleadings burden none of them individually as the sole evidence of that promise.  Plaintiff's attempt to establish that Alpha Blue and Blacksands's promissory estoppel counterclaim cannot balance on any one of them in particular is therefore irrelevant.

Also irrelevant is the fact that these documents predate the Bridge Loan Agreement. Logically, some of the facts establishing or reflecting Plaintiff's promise would have to predate the Bridge Loan Agreement because Alpha Blue and Blacksands entered into the Bridge Loan Agreement with the intent that it be refinanced into the RCF promised by Plaintiff.

As Plaintiff admits within its own argument, the fact that its promise to issue the RCF might run afoul of the Statute of Frauds does not defeat the cause of action.  At pages 16-17, Plaintiff cites two cases[5] that specifically hold that promissory estoppel is in fact available to enforce a contract if justice so requires even if the Statute of Frauds would otherwise prevent enforcement.  Alpha Blue and Blacksands have alleged egregious and severe damages going beyond lost profits, including, among other things, the exorbitant interest payments Plaintiff inappropriately induced Alpha Blue and Blacksands to make once Plaintiff decided to breach its promise to issue the RCF.  Counterclaims, ¶¶ 61-64.

Plaintiff's arguments with respect to the Type II agreement reached by the parties, including that the Type II agreement has no "formation" problems and that Alpha Blue and Blacksands do not adequately plead promissory estoppel with respect to an agreement to negotiate in good faith, are irrelevant because the promissory estoppel Counterclaim concerns

_____

[5]  *See BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 516 (S.D.N.Y. 2013); *720 Lex Acquisition LLC v. Guess? Retail, Inc.*, No. 09 CIV 7199 (DAB), 2011 WL 5039780, at *4 (S.D.N.Y. Oct. 21, 2011).

Plaintiff's promise to issue the RCF, not Plaintiff's promise to negotiate it.  Alpha Blue and

Blacksands have, in short, adequately alleged promissory estoppel in the alternative.

### III

### UNJUST ENRICHMENT CLAIM ADEQUATELY PLEADED

Plaintiff's arguments in support of dismissal of the unjust enrichment Counterclaim rest

on a scaffolding of false assumptions.

First, as set forth in Section I.D above, Alpha Blue and Blacksands have adequately

alleged a promise by Plaintiff to issue the RCF.

Second, whether or for what reason Alpha Blue and Blacksands have not yet repaid the

principal on the Bridge Loan Agreement in full is irrelevant, because their unjust enrichment

counterclaim deals only with the interest Plaintiff improperly induced Alpha Blue to pay.

Third, Plaintiff improperly attempts to use the fact that the interest payments were

delineated pursuant to the Bridge Loan Agreement to absolve itself of improperly seeking and

extending those payments pursuant to its false promise to issue the RCF.  Plaintiff cites to

authority stating that recovery in quasi contract is only available in the absence of an enforceable

written agreement between the parties, but this only means that, if the agreement between the

parties is pursuant to a valid binding contract, unjust enrichment is usually not available as a

separate claim for the same misconduct.  Here, if this court finds that the parties had a valid Type

I agreement to enter into the RCF, Alpha Blue and Blacksands will concede that a separate unjust

enrichment counterclaim cannot be stated.  But, in the alternative, Plaintiff's promise to issue the

RCF can and does support such a claim.

The fact that the interest payments induced by Plaintiff's promise to enter into the RCF

18

were pursuant to the terms of another agreement is immaterial (and, in any event, the Bridge

Loan Agreement before Plaintiff induced extensions to it only provided for interest payments

through the February 2014 maturity date).  As Alpha Blue and Blacksands allege, Plaintiff's

promise to issue the RCF, not the parties' Bridge Loan Agreement, caused Alpha Blue and

Blacksands to continue to wait for the RCF, which also meant waiting to repay the full

outstanding amount of the Bridge Loan.  Counterclaims, ¶¶ 81-83.  Had Plaintiff fulfilled its

promise and issued the RCF, Alpha Blue would have refinanced the Bridge Loan into the RCF,

cutting off the interest payments at the higher rate sometime before May 2014.  Counterclaims,

¶¶ 83, 86.  As an alternative to Blacksands' and Alpha Blue's breach of agreement claim resting

on a Type I preliminary agreement, therefore, the unjust enrichment claim is sufficiently pleaded

to withstand Plaintiff's motion to dismiss.

## IV

### FRAUDULENT MISREPRESENTATION ADEQUATELY PLEADED

As with its arguments with respect to the other Counterclaims, Plaintiff's arguments in

support of dismissal of the fraudulent misrepresentation Counterclaim rely upon its

mischaracterization of the allegations in support of Blacksands' and Alpha Blue's breach of

agreement claim.

Contrary to Plaintiff's assertions, Alpha Blue and Blacksands do make specific, adequate

allegations of misrepresentations and scienter, including that: (i) Plaintiff said that it would draft

the RCF but did not, (ii) Plaintiff at one point told Alpha Blue and Blacksands that it might not

be willing to issue the RCF, despite its agreement to do so, because Goldleaf Jewelry, another

Chinese company, was apparently interested in purchasing the California oil field -- though,

19

when reminded of its obligation to Alpha Blue and Blacksands to issue the RCF, Plaintiff quickly

walked back that statement, and (iii) Plaintiff extended the Bridge Loan Agreement's maturity

date, and the time period during which it collected interest payments from Alpha Blue, based on

its false promise that it would issue the RCF.  Counterclaims, ¶¶ 23, 35-48.

Plaintiff's argument that these allegations do not make economic sense or that they

deviate from the obligations of the Bridge Loan Agreement is simply incorrect.  The Bridge Loan

Agreement, as discussed, was part of a larger agreement to negotiate and enter into the RCF, so

any obligation to pay interest under it does not preclude the claimed breach of Plaintiff's broader

promise to negotiate and issue the RCF.  Moreover, Plaintiff's fraudulent representations resulted

in it stringing Alpha Blue and Blacksands along beyond the original February 2014 maturity date

of the Bridge Loan, resulting in Plaintiff collecting exorbitant interest on the Bridge Loan for

months beyond the intended maturity date, when that loan was to be refinanced into the RCF at a

lower rate.  Finally, Plaintiff's remark regarding its unwillingness to issue the RCF in light of

Goldleaf Jewelry's interest in buying the California oil field requires further illumination.  While

Plaintiff has tried to explain the remark away as part of its summary judgment motion, it does not

do so here.  And even if that explanation had been included in Plaintiff's papers on this motion, it

requires further probing through discovery.  What Plaintiff characterizes as an innocent remark

seems at least as likely to be a tipping of its hand that it intended to favor a domestic Chinese

company over Alpha Blue and Blacksands in a competition for acquisition of the California oil

field -- a revelation that Plaintiff quickly tried to brush off when reminded of its obligations by

Alpha Blue and Blacksands.

Finally, as with their promissory estoppel and unjust enrichment claims, to the extent this

20

court finds that Plaintiff entered into a Type I agreement obligating it to issue the RCF, Alpha

Blue and Blacksands agrees that a separate alternative claim for fraudulent misrepresentation is

not sustainable or necessary.  Plaintiff's argument that there was no separate promise to enter into

the RCF that was the inducement for Alpha Blue and Blacksands to enter into the Bridge Loan

Agreement and assume responsibility for the interest payments is, as discussed above, incorrect.

## **CONCLUSION**

For the reasons given here, Plaintiff's motion to dismiss the Counterclaims should be

denied.

Dated:  New York, New York
        February 27, 2015

KORNSTEIN VEISZ WEXLER
  & POLLARD, LLP

By: s/ Kevin J. Fee
      Kevin J. Fee (KF-8818)
      Joel H. Rosner (JR-1776)
757 Third Avenue
New York, New York 10017
(212) 418-8600
kfee@kvwmail.com
jrosner@kvwmail.com

Attorneys for Defendant and Counter-Plaintiffs
The Blacksands Pacific Group, Inc. and
Counter-Plaintiff Blacksands Pacific Alpha Blue LLC