UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

-against-                                                    17-cr-0155 (LAK)
                                                          [15-cv-0070 (LAK)]

RAHEEM BRENNERMAN, et ano.,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8/8/2017__

## MEMORANDUM OPINION

Appearances:

                    Robert B. Sobelman
                    Nicolas T. Landsman-Roos
                    Assistant United States Attorneys
                    JOON H. KIM
                    ACTING UNITED STATES ATTORNEY

                    Maranda E. Fritz
                    Brian D. Waller
                    THOMPSON HINE LLP
                    *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

          This criminal contempt prosecution arises out of failures to comply fully with two

court orders requiring post-judgment discovery in a civil case. The matter is before the Court on

defendants' motions to (1) dismiss or deny the petition that commenced the criminal prosecution,

and (2) disqualify the Court or, alternatively, to assign the case to a different judge.[1]

*Background*

*The Civil Action*

ICBC (London) plc ("ICBC"), Blacksands Pacific Group, Inc. ("Blacksands"), and Blacksands Pacific Alpha Blue, LLC ("Alpha Blue"), a Blacksands subsidiary, entered into a bridge loan agreement ("BLA") on November 25, 2013.[2] Under the BLA, ICBC provided a $20 million, 90-day loan to Alpha Blue, which Blacksands absolutely and unconditionally guaranteed.[3] Of the available $20 million, Alpha Blue withdrew $5 million.[4] Neither Alpha Blue, as primary obligor, nor Blacksands, as guarantor, repaid the loan when it matured in February 2014.[5] ICBC extended the deadline for repayment of principal on two occasions, first to March 31, 2014, and later to

---

[1] By letter dated August 4, 2017, defendants withdrew without prejudice their motions to suppress evidence and return seized property. *See* DI 47 (referencing as yet unfiled initial letter). A subsequent letter, however, makes clear that the suppression motion will not be refiled in this case. *Id.* Accordingly, the Court denies the suppression motion and related request for relief with prejudice as to this case.

[2] DI 1 [15-cv-0070], Ex. A Part 6 at 3.

Hereinafter references to docket item numbers in the civil action, 15-cv-0070 (LAK), are preceded by the letter A. All other docket item numbers refer to the docket sheet for the criminal proceeding, 17-cr-0155 (LAK).

[3] *Id.*; BLA § 9.1.

[4] DI A1, Ex. A Part 6 at 5.

[5] *Id.*; DI A13 ¶ 15.

July 31, 2014, while still collecting interest payments.[6]   After each of these deadlines was missed, however, ICBC sent a notice of default to Blacksands.[7]

On or about December 8, 2014, ICBC commenced an action in the New York Supreme Court against Blacksands to recover $5 million plus interest and attorneys' fees of nearly $400,000 on Blacksands's guarantee of the obligations of Alpha Blue under the BLA.   Under New York procedure, ICBC did so by moving for summary judgment in lieu of a complaint.[8]   Blacksands promptly removed the case to this Court.   In due course, both Blacksands and Alpha Blue filed counterclaims against ICBC.[9]

By order dated September 29, 2015, this Court granted ICBC's motion for summary judgment on its claim on Blacksands's guarantee and granted in substantial part its motion to dismiss the counterclaims.[10]   It granted also a Rule 54(b) certificate with respect to ICBC's claim against Blacksands.   The Clerk then entered judgment in favor of ICBC and against Blacksands.

Blacksands appealed.   As no supersedeas bond or other security was posted, however,

---

[6]   DI A1, Ex. A Part 6 at 4-5.

[7]   The first notice of default was sent on April 4, 2014 by fax, which Blacksands claims not to have received.   *See* DI A1, Ex. A Part 5, at 17-21 (April 4, 2014 Notice of Default); DI A1, Ex. A Part 5, at 13 (January 30, 2014 letter from Blacksands providing fax number); DI A13 ¶ 19 (Blacksands disputing receipt of April fax).   The second notice was sent by courier in August 2014, and Blacksands acknowledged receipt.   DI A13 ¶¶ 23, 25 (Blacksands acknowledging receipt of August 2014 Notice of Default).

[8]   *See* N.Y. C.P.L.R. 3213.

[9]   DI A11.

[10]   *ICBC (London) plc v. Blacksands Pac. Grp., Inc.*, 2015 WL 5710947 (S.D.N.Y. Sept. 29, 2015).

ICBC began post-judgment discovery in an effort to locate assets that might be used to satisfy the judgment, serving document requests and interrogatories on or about March 24, 2016.[11]

### The First Order

Blacksands initially stonewalled the discovery requests, interposing frivolous objections. ICBC then moved to compel responses. The Court granted the motion and, on August 22, 2016, directed Blacksands to "comply fully with the outstanding discovery requests within fourteen days of the date of th[e] order."[12]

### The Second Order

On September 6, 2016, the day Blacksands was obliged to comply with the August 22, 2016 order (the "First Order"), Blacksands's counsel wrote to the Court and claimed that Blacksands had "agree[d]" to pay the judgment "pending its appeal" and purportedly requested the Court's assistance in determining the amount due under the judgment.[13] In reliance on the apparent commitment to pay, ICBC did not immediately seek further relief with respect to compliance with the First Order. The Court, at Blacksands's request, then held two conferences with counsel in what was said by Blacksands to be an effort to determine the amount owing.[14] On September 27, 2016,

---

[11]

DI A84 ¶ 3.

[12]

DI A87.

[13]

DI A88.

[14]

The point supposedly at issue was the interest calculation. *See* DI A88.

however, at the conclusion of the second conference, the Court entered the following order (the "Second Order"):

> "On August 22, 2016, this Court directed defendant to comply fully with certain outstanding discovery requests within fourteen days. It has not complied with that order.
>
> "Unless the case is fully and definitively settled on or before October 3, 2016, defendant shall comply fully with those discovery requests no later than 4 p.m. on that date. Any failure to comply with this order may result in the imposition of sanctions, including those associated with contempt of court, as well as in the imposition of coercive sanctions and other relief for civil contempt."[15]

No settlement was reached. Accordingly, Blacksands became obligated under the Second Order to comply fully with ICBC's discovery requests by 4:00 p.m. on October 3, 2016. It failed to respond.[16]

In the meantime, the Court of Appeals affirmed the judgment against Blacksands.[17]

*The Civil Contempt Adjudications*

*Blacksands*

On October 13, 2016, ICBC moved to hold Blacksands in civil contempt. No opposition was filed. Moreover, Blacksands's counsel offered no defense of Blacksands's noncompliance during the contempt hearing.[18] On October 20, 2016, the Court orally held

---

[15]

DI A92. For the background in this paragraph, see Hessler Decl. [DI A102] ¶¶ 5-6.

[16]

DI A102 ¶ 7.

[17]

*ICBC (London) plc v. Blacksands Pac. Grp., Inc.*, 662 F. App'x 19 (2d Cir. 2016).

[18]

Civil Contempt Hr'g Tr. 6:13-7:14, Oct. 20, 2016.

Blacksands in civil contempt and imposed coercive sanctions on it. The Court entered a written order to that effect on October 24, 2016.[19] As will appear, the Court itself was empowered to institute criminal contempt proceedings based on the failure to comply with the orders. It elected, however, not to do so. It instead referred the matter to the United States Attorney—as it informed the parties it would—for him to consider whether to pursue criminal contempt charges "against Blacksands, [Blacksands's principal, Raheem Brennerman], or anyone else responsible."[20]

*Brennerman*

During the October 20, 2016 contempt hearing, ICBC previewed also its intention to initiate civil contempt proceedings against Blacksands's principal, Raheem Brennerman, in the event the civil contempt adjudication and coercive sanctions against Blacksands failed to achieve Blacksands's compliance with the Court's orders.[21] To that end, ICBC moved the Court for an order directing Blacksands's counsel of record, Latham & Watkins ("Latham"), to disclose contact

---

[19]

DI A108.

[20]

Oct. 20 Hr'g Tr. 8:23-9:4.

The October 24 written order reiterated the Court's prior warning that Brennerman would be at risk of contempt proceedings directed at him personally in the event full compliance was not forthcoming:

> "Upon application by the Plaintiff, the Court will consider the imposition of further sanctions, if there is an adequate showing that those imposed by this Order do not achieve compliance. Without limiting the generality of the foregoing, ICBC is at liberty to commence by appropriate process civil and/or criminal contempt proceedings against Raheem Brennerman and anyone else who is properly chargeable with contempt in this matter." DI A108.

[21]

Oct. 20 Hr'g Tr. 4:21-5:17.

information for Brennerman so that ICBC could serve him personally with any forthcoming civil contempt motion.[22] The Court deferred ruling on ICBC's request in order to permit Latham to research potential privilege issues implicated by ICBC's request.[23]

The next day, Latham informed the Court by letter that it had "provided counsel for ICBC with contact information [for Brennerman] and conveyed to [ICBC's counsel] that he may call [Brennerman] directly."[24] ICBC responded that, although Latham had provided for Brennerman a phone number, email address, and office address, Latham did not disclose Brennerman's residence address, which ICBC had reason to believe was in Latham's possession.[25] The Court set a conference on the matter and ordered Latham to bring to court "all contact information for Raheem J. Brennerman including, but not limited to, his (a) residence addresses, (b) business addresses, (c) telephone numbers, and (d) email addresses."[26]

It subsequently came to light that Latham did not have Brennerman's residence address.[27] When Latham later sought that information from Brennerman, he declined to provide it.[28]

---

[22]     *Id.* at 5:18-24.

[23]     *Id.* at 9:13-16.

[24]     DI A106.

[25]     DI A107.

[26]     DI A109.

[27]     *See* Hr'g Tr. 2-8, Oct. 24, 2016.

[28]     Harris Supp. Aff. [DI A132] ¶ 5.

Latham informed the Court of its belief that he was in Switzerland.[29]

In any event, on December 7, 2016, ICBC—based on a reasonably documented assertion that Brennerman "controls every aspect of Blacksands' existence and operation," is "legally identified" with it, and "has directed its continuing contempt of Court"[30]—moved by order to show cause to hold Brennerman in civil contempt and to impose coercive sanctions.[31] The Court granted the order to show cause, made it returnable on December 13, 2016, and required the service and filing of any responsive and reply papers at or before 4:00 p.m. on December 11 and 12, 2016, respectively.[32] The order to show cause and supporting papers were served electronically[33] on Brennerman himself at 3:50 p.m. on December 7, 2016.[34] They were served also on Blacksands by personal service on Latham and by mail.[35]

---

[29]

Id.

[30]

Hessler Decl. [DI A123] ¶ 10.

The Court notes that the notice of appeal from the summary judgment against Blacksands was signed by Brennerman personally, purportedly on behalf of Blacksands and Alpha Blue, rather than by any attorney. DI A46. In addition, he personally wrote the Court to oppose, on behalf of Blacksands, a motion by its first lawyers in the civil case to withdraw. DI A37.

[31]

DI A122 at 19-23.

[32]

DI A121; DI A125.

[33]

They were served electronically due to Brennerman's refusal to provide any information concerning the location of any of his residences or his personal whereabouts.

[34]

Pollak Aff. [DI A126] & Ex. B.

[35]

DI A126 & Exs. A, B.

*Brennerman's* Ex Parte *Application*

On Sunday, December 11, 2016, Brennerman sent an email to the Court's deputy clerk at his court email address.[36]  Although the email indicated that copies were sent to lawyers at Latham, it bore no indication that copies were sent to ICBC's counsel despite the fact that Brennerman knew their email addresses.

Attached to the email was a letter, purportedly by Brennerman, to the undersigned.[37]  The first two paragraphs requested more time to respond to the contempt motion, stated that Brennerman's choice of counsel to represent him in this matter was the Paul, Weiss firm,[38] which was unable to do so, and stated that Brennerman was "in the process of engaging new personal counsel."[39]  Attached to the letter were copies of two emails with respect to his purported attempt to retain Paul, Weiss and a very long "settlement proposal" with respect to the ICBC dispute.  There was no indication that the letter and emails were sent to ICBC's counsel.

The Court denied Brennerman's *ex parte* application the next day but indicated that "[s]hould circumstances warrant, the Court would consider reopening proceedings on the contempt motion."[40]

---

[36]

DI A127.

[37]

DI A128.

[38]

The undersigned was a partner in Paul, Weiss prior to his appointment to this Court in 1994.

[39]

DI A128.

[40]

DI A134.

*The Civil Contempt Hearing*

On December 13, 2016, the Court convened a hearing on ICBC's motion to hold Brennerman in civil contempt. Neither Brennerman nor counsel on his behalf attended the hearing or filed any papers with the Court. The Court held Brennerman in civil contempt and imposed coercive sanctions on him.[41] A written order to that effect was filed on December 15, 2016.[42] The civil contempt adjudication and sanctions, however, did not result in compliance with the Court's prior orders to produce discovery.

*The Criminal Action*

On March 3, 2017, the government filed in the civil case a petition for an order directing Blacksands and Brennerman "to show cause why they should not be found in criminal contempt."[43] Specifically, the petition charged Brennerman and Blacksands, pursuant to Federal Rule of Criminal Procedure 42, with criminal contempt in violation of 18 U.S.C. § 401(3) for allegedly "willfully and knowingly disobey[ing] and resist[ing]" this Court's August 22, 2016 and September 27, 2016 orders.[44]

---

[41]    Civil Contempt Hr'g Tr. 6-7, Dec. 13, 2016 [DI A141].

[42]    DI A139.

[43]    DI A146 at 4.

[44]    *Id.* ¶ 13.

*Notice Pursuant to Rule 42*

On March 7, 2017, the Court held an *ex parte* conference with the government to address the government's request for an order to show cause. The Court expressed its inclination to issue an order to show cause with respect to Blacksands, but to issue an arrest warrant with respect to Brennerman. It explained that its thinking was informed by: (1) Brennerman's unknown whereabouts; (2) Brennerman's failure to appear at the civil contempt hearing; (3) Brennerman's refusal to provide his residence address to Latham for the purpose of facilitating service of ICBC's civil contempt motion; (4) the fact that Brennerman "spends a great deal of time and has business interests outside of the United States"; and (5) the "history in this case of attempts by Brennerman to delay, obscure, and avoid various reckonings along the way."[45] The government agreed that an "arrest warrant [wa]s certainly appropriate here, given Mr. Brennerman's history of not appearing at the civil contempt hearing . . . and the nature and circumstances of the offense charged."[46] Ultimately, the Court issued an order directing Blacksands "to show cause[] at a trial why it should not be held in criminal contempt of court as claimed by the government"[47] and an arrest warrant for Brennerman that incorporated and attached the government's petition.[48] The show cause order and arrest warrant stated also that the contempt trial would "commence on May 9, 2017 at 9:30 a.m. or

---

[45] Conf. Tr. 2-6, Mar. 7, 2017 [DI 35-3].

[46] Mar. 7 Conf. Tr. 3-4.

[47] DI A148.

[48] DI 12-3.

such adjourned date as the Court may fix."[49]

### The Docketing Order

Given the hybrid nature of this action—"[i]t's a criminal case within a civil case"[50]—the Court issued an "administrative order"[51] (1) directing the Clerk of Court to assign a criminal docket number for the government's criminal contempt proceeding, (2) dictating the caption that should appear on all subsequent filings related to the criminal contempt proceeding, and (3) directing that papers filed and docket entries made in the criminal case be spread also to the civil docket.[52]

### Brennerman's Arrest

On April 19, 2017, law enforcement agents arrested Brennerman for criminal contempt at a residence in Las Vegas. The government sought an order of detention from the magistrate judge who arraigned Brennerman in the District of Nevada. Brennerman waived his right to a bail hearing in Nevada and requested that one be held in this district instead.

Chief Judge Colleen McMahon, sitting Part One, conducted a bail hearing and, on

---

[49]
      DI A148; DI 12-3.

[50]
      Mar. 7 Conf. Tr. 8:17-18.

[51]
      *Id.* at 10:11-12.

[52]
      DI 2.

May 4, 2017, granted Brennerman's bail application and imposed certain conditions of release.[53] The undersigned modified those conditions in an order of May 10, 2017.[54]

### Indictment of Brennerman on Fraud Charges

On June 1, 2017, the government informed the Court that an indictment had been unsealed charging Brennerman "with conspiracy to commit bank and wire fraud, bank fraud, wire fraud, and immigration fraud, arising out of the defendant's use of Blacksands Pacific and other related corporate entities to fraudulently obtain financing from financial institutions, including [ICBC] and the loan at issue in [ICBC's civil action before this Court], for purported business ventures."[55]  That case is pending before Judge Richard J. Sullivan.

### The Present Motion

Defendants filed an omnibus motion on June 30, 2017 requesting "recusal and reassignment of this action, denial or dismissal of the Petition, and return and/or suppression of materials seized from the home and the person of Raheem Brennerman."[56]  As stated above, defendants subsequently withdrew their motion to suppress.

---

[53]     DI 13.

[54]     DI 15

[55]     DI A152.

[56]     Defs.' Br. [DI 34] 1.

*The Request to the Assignment Committee to Reassign this Case*

On July 12, 2017, Brennerman's counsel wrote to Chief Judge McMahon as chair of this Court's Assignment Committee. Her letter contended, as does her present motion before the undersigned, that this case was commenced improperly by the filing of the petition in the civil case, that it should have been commenced by the filing of a new criminal case, and that the criminal contempt proceeding would have been randomly assigned had that been done. She asked that the Assignment Committee "rectify that [alleged] error and direct that this proceeding be assigned in accordance with this District's procedures set forth in Rule 6(b)" of the Rules for the Division of Business Among District Judges ("RDB").[57]

That application was denied on the following day.[58]

## Discussion

### I. Recusal

Defendants move for recusal on two grounds: (1) the alleged contumacious conduct at issue "involves disrespect toward or criticism of"[59] the undersigned in consequence of which the case must be tried before a different judge pursuant to Federal Rule of Criminal Procedure 42; and

---

[57] DI 38.

She did so notwithstanding that the RDB expressly provide that they "are adopted for the internal management of the case load of the court and shall not be deemed to vest any rights in litigants or their attorneys." S.D.N.Y. Loc. R. at 101.

[58] DI 40.

[59] Fed. R. Crim. P. 42(a)(3).

(2) they contend that the undersigned's "impartiality might reasonably be questioned"[60] by virtue of the "antagonism" the Court allegedly has displayed toward Brennerman and therefore the undersigned is disqualified under 28 U.S.C. § 455(a).[61]

### A.    Rule 42

Rule 42 provides that a judge "is disqualified from presiding at the contempt trial or hearing" for a defendant whose alleged "criminal contempt involves disrespect toward or criticism of [that] judge."[62]    Alleged failure to comply with a court order requiring a party to comply with discovery requests, the basis for this criminal contempt proceeding, however, does not involve the disrespect or criticism of a judge contemplated by Rule 42(a)(3).    Other courts have reached the same conclusion in similar circumstances.[63]

In *Nilva v. United States*,[64] the petitioner was convicted of criminal contempt for

---

[60]    28 U.S.C. § 455(a).

[61]    DI 34 at 20-29.

[62]    Fed. R. Crim. P. 42(a)(3).

[63]    *Dominique v. Georgia Gulf Corp.*, 81 F.3d 155 (5th Cir. 1996) (per curiam) (district judge not required to recuse himself from contempt hearing based on party's violation of a court order to submit joint status report); *United States v. Berardelli*, 565 F.2d 24, 30 (2d Cir. 1977) (judge who ordered defendant to testify before grand jury following grant of immunity not disqualified from trying criminal contempt charge based on defendant's alleged refusal to comply with order); *United States v. Ciccone*, No. 90-cv-0963 (JSM), 1997 WL 202120, at *1 (S.D.N.Y. Apr. 24, 1997) (judge who ordered preliminary injunction not disqualified from trying criminal contempt case based on its alleged violation).

[64]    352 U.S. 385 (1957).

willfully disobeying a court order to produce certain subpoenaed corporate records. Petitioner argued on appeal that the "contempt proceeding should have been heard by a judge other than the one who initiated the proceeding."[65] The Supreme Court disagreed. It held that the contempt at issue "was not of th[e] kind" requiring disqualification per Rule 42 and that the petitioner had not shown that the trial judge abused his discretion in presiding over the case.[66]

Similarly, in *Goldfine v. United States*,[67] the appellants were convicted of criminal contempt for willfully disobeying a court order requiring them to produce certain records to their litigation adversary, the Internal Revenue Service. They argued that the district judge should have been disqualified from presiding over the contempt hearing because he "issued the . . . order alleged to have been disregarded."[68] The First Circuit rejected the notion that violation of a court order to produce documents to an adversary—the same alleged contumacious conduct with which defendants here are charged—would fall within Rule 42's mandatory disqualification provision.[69] Indeed, the court noted that district judges "routine[ly]" oversee criminal contempt trials involving their own orders.[70]

Here, as in *Nilva* and *Goldfine*, the contempt charged does not involve "disrespect

---

[65]     *Id.* at 395.

[66]     *Id.* at 395-96.

[67]     268 F.2d 941 (1st Cir. 1959).

[68]     *Id.* at 947.

[69]     *See id.*

[70]     *Id.*

to or criticism of a judge" within the meaning of Rule 42. Defendants are charged with willfully disobeying two court orders requiring Blacksands to comply with ICBC's post-judgment discovery requests. Although the alleged contempt may have displayed a "lack of respect for *the [legal] system*"—as all contumacious conduct inherently does—nothing about it involved any personal criticism of or disrespect directed specifically toward *the undersigned*.[71] Accordingly, Rule 42 does not require disqualification.

### B.    Section 455

Section 455(a) requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[72] That requirement "is commonly limited to those circumstances in which the alleged partiality 'stem[s] from an extrajudicial source.'"[73] In consequence, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."[74] Importantly, any "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes

---

[71]    Hr'g Tr. 10, May 10, 2017.

[72]    28 U.S.C. § 455(a).

[73]    *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (quoting *Liteky v. United States*, 510 U.S. 540, 544 (1994)).

[74]    *Liteky*, 510 U.S. at 555; *see also id.* (requiring a "predisposition . . . so extreme as to display clear inability to render fair judgment").

display[,]" do not rise to that impermissible level.[75]

When assessing claims under Section 455(a), "the appropriate standard is objective reasonableness—whether 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal.'"[76] "Like all legal issues, judges determine appearance of impropriety—not by considering what a straw poll of the only partly informed man-in-the-street would show—but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge."[77]

Any of the Court's comments from the bench or during its conference with the government upon which defendants rely "were germane to the issues presented, based on the evidence, and made on the record in proceedings over which the Court was presiding."[78] As the Supreme Court made clear in *Liteky*, such comments are not a basis for recusal unless they reflect a deep-seated antagonism that would make fair judgment impossible.[79] Thus, a judge's comments that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases" very

---

[75]

    *Id.* at 555-56.

[76]

    *Carlton*, 534 F.3d at 100 (quoting *Diamondstone v. Macaluso*, 148 F.3d 113, 121 (2d Cir. 1998)).

[77]

    *Chevron Corp. v. Donziger*, 783 F. Supp. 2d 713, 721 (S.D.N.Y. 2011) (internal quotation marks omitted) (quoting *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988)).

[78]

    *Id.* at 722.

[79]

    510 U.S. at 555.

rarely support a bias or partiality challenge.[80]  Quite clearly, this is not such an exceptional case for the reasons articulated by the government in its memorandum of law.[81]

A few other points bear mentioning.

First, defendants take issue with the Court's decision to provide Brennerman with notice of the charged criminal contempt through an arrest warrant and the attached petition. Rule 42, however, explicitly provides that a court may give notice "in an arrest order."[82]  In other words, defendants' primary example of the Court's supposed bias boils down to a simple disagreement with how the Court exercised its lawful discretion.  But quarrels with prior adverse rulings are not a basis for questioning the Court's impartiality.[83]

Second, defendants take issue with the Court's referral of this matter to the United States Attorney.  Contrary to defendants' suggestion, however, the Court did not make the prosecutorial decision to charge defendants with criminal contempt—although it certainly could have.[84]  Instead, the Court referred the matter to the United States Attorney for him to consider and

---

[80]

*Id.*

[81]

Gov't Br. [DI 39] 9-12.

[82]

Fed. R. Crim. P. 42(a)(1).

[83]

*See United States v. Colon*, 961 F.2d 41, 44 (2d Cir. 1992) ("[E]arlier adverse rulings, without more, do not provide a reasonable basis for questioning a judge's impartiality").

For that reason, defendants' quarrels with (1) the Court's overruling of Blacksands's objections to the post-judgment discovery requests, (2) the Court's order that Latham disclose contact information for Brennerman, and (3) the Court's order denying Brennerman's request for a time extension similarly fail to form bases for questioning the Court's impartiality.

[84]

Fed. R. Crim. P. 42(a)(2).

decide whether to prosecute. And even if the Court had made the prosecutorial decision with respect to these defendants, Rule 42(a)(2) clearly grants it the power to do so.

Third, defendants have not shown that the undersigned has personal knowledge of disputed evidentiary facts. While the Court undoubtedly has knowledge of the underlying civil action and the court orders that form the basis of the criminal contempt proceeding, "[k]nowledge acquired by the judge while he performs judicial duties does not constitute grounds for disqualification."[85]

## II.    *Dismissal or Denial of the Petition*

Defendants contend that the government's petition should be dismissed or denied because it failed properly to notify Brennerman "of the nature of the potential criminal sanctions," and because the petition is substantively deficient in several respects.[86] The Court is not persuaded.

### A.    *Notice of Criminal Nature of the Proceedings*

Rule 42(a)(1)(C) requires that a defendant charged with criminal contempt receive notice "describ[ing] it as such"—*i.e.*, as *criminal* contempt as distinguished from *civil* contempt.[87]

---

[85]

*Carlton*, 534 F.3d at 101 (internal quotation marks omitted) (quoting *United States v. Coven*, 662 F.2d 162, 168 (2d Cir. 1981)).

[86]

Defs.' Br. 30.

[87]

Fed. R. Crim. P. 42 advisory committee's note ("The requirement in the second sentence that the notice shall describe the criminal contempt as such is intended to obviate the frequent confusion between criminal and civil contempt proceedings and follows the suggestion made in *McCann v. New York Stock Exchange*, 80 F.2d 211, C.C.A.2d.").

On its face, the petition here made clear that defendants were charged with criminal contempt.[88] The petition was incorporated in the arrest warrant. Defendants' contention that Brennerman was not notified of the nature of the potential criminal sanctions is hollow.

### B. Alleged Substantive Deficiencies

"[S]ince criminal contempt proceedings are summary in nature and technical pleadings are not required, the prosecution may be by *petition*, affidavit or other showing."[89] All that is required by Rule 42 is simple notice that states the time and place of the trial, allows the defendant a reasonable time to prepare a defense, and states the essential facts constituting the charged criminal contempt.[90]

Here, notice was given to Brennerman by the petition and its attachment to and incorporation in the arrest warrant and to Blacksands by order to show cause. First, both the arrest

---

[88]

*See, e.g.*, DI 1 at 1 ("[T]he Government respectfully submits that criminal contempt is the appropriate sanction for the Blacksands Group's and Brennerman's continuing misconduct."); *id.* ("The United States of America . . . presents this Petition pursuant to Rule 42 of the Federal Rules of Criminal Procedure for an order requiring the Blacksands Pacific Group, Inc. and Raheem J. Brennerman to show cause why they should not be found in criminal contempt of the Orders entered by this Court on or about August 22, 2016 (Dkt. No. 87 and September 27, 2016 (Dkt. No. 92) in the above-captioned action, in violation of Title 18, United States Code, Section 401(3)."); *id.* at 4 (requesting that the Court (1) issue an order holding Blacksands and Brennerman in "criminal contempt," (2) impose "an appropriate monetary penalty" against defendants, and (3) impose "an appropriate term of imprisonment against Raheem J. Brennerman").

Moreover, the Court twice previously had warned Brennerman that he would be at risk of criminal contempt charges directed at him personally in the event Blacksands did not fully comply with the Court's orders. Oct. 20 Hr'g Tr. 8:18-9:4; DI 108 at 2.

[89]

*Yates v. United States*, 316 F.2d 718, 723 (10th Cir. 1963) (emphasis added).

[90]

*United States v. De Simone*, 267 F.2d 741, 743 (2d Cir. 1959); Fed. R. Crim. P. 42(a)(1).

warrant and order to show cause stated that the trial would "commence on May 9, 2017 at 9:30 a.m. or such adjourned date as the Court may fix."[91]  Second, each defendant was given over two months to prepare a defense to the charged contempt.[92]  Third, the petition, which was attached to each order and incorporated into the arrest warrant, alleged the essential facts constituting the charged criminal contempt: (a) the Court entered two orders compelling Blacksands to comply with post-judgment discovery requests; (b) Brennerman knew of those orders; (3) Blacksands violated, and Brennerman aided and abetted the violation, of those orders; and (4) those violations were willful.[93]

Defendants' arguments with respect to whether Brennerman had notice of the orders in the civil case and an opportunity to respond, whether those orders were properly issued, and whether the Court adequately considered the sufficiency of Brennerman's "November response and document production"—as the government pointed out—go the merits of this criminal contempt case.  Such questions are appropriately dealt with at trial, where defendants will have ample opportunity to present their defense.

III.    *Defendants' Reassignment Contention*

Defendants contend that the criminal contempt proceeding should be reassigned to another judge on the theory that this contempt proceeding "would have been randomly assigned [under the RDB], subject only to an assertion by the government that it is related to a pending civil

---

[91]
       DI 12-3 (arrest warrant); DI A148 (show cause order).

[92]
       The Court subsequently adjourned the trial until September 6, 2017, *see* May 10 Hr'g Tr. at 10, giving defendants approximately five months to prepare for trial.

[93]
       *See* DI 1.

action" if the government had "commenced a new matter, filed and initiated with the Clerk's Office like any other new proceeding, civil or criminal or miscellaneous,"[94] as defendants claim it was obliged to do.  Any such relatedness claim, they contend, would have been governed by Rule 13 of the RDB, which states that "[c]riminal cases are not treated as related to civil cases."[95]  This argument already has been rejected by this Court's Assignment Committee.[96]  And it has no merit.

As the foregoing makes clear, neither the Court, had it initiated a criminal contempt proceeding itself, nor the government was required to commence a wholly new proceeding in order to prosecute the alleged contempt.[97]  Defendants' arguments related to the RDB therefore fail because their indispensable premise is wrong.  But even if the RDB had been implicated,

---

[94]    Defs.' Br. 19.

[95]    Defs.' Br. 19-20; RDB 13(a)(2)(C).

[96]    DI 40.

[97]    Defendants cite no authority that supports their contrary argument.  They rely on two cases, neither of which is on point.

In *Centeno-Bernuy v. Perry*, No. 03-cv-0457, 2009 WL 2424380 (RJA), at *7 (W.D.N.Y. Aug. 5, 2009), the magistrate judge merely referred to a related criminal contempt proceeding by its docket number, 04 Misc. Cr. 111. Defendants infer from that citation that the government must have initiated a new miscellaneous criminal action before a randomly assigned judge.  But nothing in the magistrate judge's report and recommendation indicates that that was the case.  And even if it were the case, there is nothing to suggest that the government was required to proceed in that manner.

In *In re Criminal Contempt Proceedings Against Crawford*, 133 F. Supp. 2d 249 (W.D.N.Y. 2001), the district judge whose order formed the basis of the criminal contempt charges did in fact preside over the contempt trial.  *See id.* at 266.  Just as here, the defendants moved to recuse the court because, among other things, "the Court [wa]s being called upon to rule on the validity of its own order[.]"  *Id.* at 264.  The court rejected that argument and held that recusal was not required or warranted in that case.  Thereafter, the court found the defendants guilty of criminal contempt, and the Second Circuit affirmed the convictions.  *In re Criminal Contempt Proceedings Against Gerald Crawford, Michael Warren*, 329 F.3d 131, 133 (2d Cir. 2003).

defendants' arguments would fail on the merits.

A.    *Commencement of a New Criminal Proceeding*

Under Rule 42, courts have the power to initiate criminal contempt prosecutions *sua sponte*, a course this Court did not take here.[98]   The government too is empowered to initiate a criminal contempt prosecution, as it did in this instance.

Once the decision to prosecute is made—whether made by the Court or by the government—the contempt proceeding need not be initiated by indictment or information[99] since criminal contempts "are not considered crimes in the constitutional sense."[100]   Rather, as previously demonstrated, Rule 42 permits prosecution upon simple notice or by service of an order to show cause or an arrest order.[101]   Perhaps unsurprisingly then, criminal contempt trials "routine[ly]" are held "before the same district judge . . . who issued the . . . order alleged to have been disregarded."[102]   If defendants' position were correct, that would not be the case.   Moreover, in some circumstances a court "may summarily punish a person who commits criminal contempt in its

---

[98]
        Oct. 20 Hr'g Tr. 8:23-9:4; Oct. 24 Hr'g Tr. 3:1-3.

        Where a court itself initiates such a prosecution, it first must "request that the contempt be prosecuted by an attorney for the government." Fed. R. Crim. P. 42(a)(2). If the government declines to do so, the Court nevertheless can appoint a private attorney to prosecute the offense. *Id.*

[99]
        *E.g.*, *Yates*, 316 F.2d at 723.

[100]
        *De Simone*, 267 F.2d at 743.

[101]
        Fed. R. Crim. P. 42(a) (disposition after notice), (b) (summary disposition).

[102]
        *Goldfine*, 268 F.2d at 947.

presence."[103]   In those instances, a defendant is charged, adjudged, and often sentenced on the spot by the judge presiding over the case, civil or criminal, in which the contempt occurred in its presence.   Plainly, those summary prosecutions do not proceed by way of a separate criminal proceeding.

In summary, neither the cases upon which defendants rely nor Rule 42 itself supports the proposition that the government was obliged to initiate a separate criminal case in order to prosecute defendants for criminal contempt.[104]

B.      *The RDB*

Assuming *arguendo* that the government had commenced a new and separate criminal proceeding, defendants' arguments with respect to the RDB still would fail.

---

[103]

Fed. R. Crim. P. 42(b).

[104]

Defendants make the following assertion in their brief:

> "While this Court acknowledged the error in the prosecution's filing of the Petition in the civil docket, the Court did not take the appropriate step of directing the matter to the Clerk for assignment or consideration of a claim of relatedness. Instead, the Court circumvented the process, having its own clerk arrange for the issuance of a new docket number while also plainly directing that the case be assigned to itself." Defs.' Br. 20.

That is inaccurate.  The Court "prepared . . . an order to deal with the fact that this is a weird hybrid proceeding.  It's a criminal case within a civil case."  Mar. 7 Conf. Tr. 8.  That "administrative" order, *id.* at 10, directed the Clerk of Court to assign a criminal docket number for the government's criminal contempt proceeding, dictated the caption that should appear on all subsequent filings related to the criminal contempt proceeding, and directed that papers filed and docket entries made in the criminal case be spread also to the civil docket.  DI 2.

First, the RDB vest no rights in litigants—they are for internal management only.[105] As the Second Circuit and numerous decisions of this Court and the Eastern District of New York have held, that fact alone dooms this aspect of defendants' motion.[106]

Second, the RDB assignment provisions apply only to cases initiated by indictment or information,[107] a fact ignored by defendants. Hence, even if the government had filed its petition as a new and independent criminal case, its assignment would not have been governed by the RDB because the accusatory instrument was neither an indictment nor an information.

Nor is this an unintended consequence of a drafting error in the RDB. The fact that the RDB do not apply to a criminal contempt proceeding like this reflects the fact that Rule 42

---

[105]

S.D.N.Y. Loc. R. at 101 ("[The RDB] are adopted for the internal management of the case load of the court and shall not be deemed to vest any rights in litigants or their attorneys . . . .").

[106]

*United States v. Davila-Bajana*, 172 F.3d 38 (2d Cir. 1998) (complaint about reassignment of case under Eastern District assignment rules "legally baseless" in light of their identical provision that "[t]hese rules are adopted for the internal management of the case load of the court and shall not be deemed to vest any rights in litigants or their attorneys"); *Chevron Corp. v. Donziger*, No. 11-cv-0691 (LAK), 2011 WL 979609, at *2 & n.11 (S.D.N.Y. Mar. 7, 2011) ("[A]s the RDB clearly state, and as both the Second Circuit and this Court have held, no litigant would have any right to reassignment even if there had been a departure from the RDB."); *United States v. Gonzalez*, 421 F. Supp. 2d 727, 732 (S.D.N.Y. 2006) (same), *vacated in part on different grounds*, 421 F. Supp. 2d 392 (2d Cir. 2008); *Gashi v. County of Westchester*, No. 02-cv-6934, 2005 WL 195517, at *15 (S.D.N.Y. Jan. 27, 2005) (same); *Nikac v. Pozzi*, 172 F. Supp. 2d 414, 416 (S.D.N.Y. 2001) (same); *Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728, 729 (S.D.N.Y. 1996) (same); *United States v. Int'l Bhd. of Teamsters*, 697 F. Supp. 710, 712 (S.D.N.Y. 1988) (same); *see also United States v. Agate*, No. 08-cr-76, 2008 WL 699513 (E.D.N.Y. Mar. 13, 2008) (same); *United States v. Astra Motor Cars*, 352 F. Supp. 2d 370, 372 (E.D.N.Y. 2005) (same); *United States v. Garces*, 849 F. Supp. 852, 861 (E.D.N.Y. 1994) (same).

[107]

RDB 6(b) ("In a criminal case, after *an indictment* has been returned by the Grand Jury or a notice has been filed by the United States Attorney's Office of an intention to file *an information* upon the defendant's waiver of indictment, the magistrate judge on duty will randomly draw from the criminal wheel, in open court, the name of a judge to whom the case should be assigned for all purposes." (emphases added)).

permits commencement of such prosecutions by any appropriate form of notice and contemplates that those prosecutions ordinarily will proceed before the judge before whom the allegedly contumacious behavior occurred, whether as part of a pending civil or pending criminal case.[108]  As this proceeding properly was commenced under Rule 42 by the petition filed in the underlying civil case,[109] the RDB have nothing to do with it.[110]

---

[108]

    The exception is that contempts involving "disrespect toward or criticism of the judge" must be tried by another judge.  *See supra* section I.A.

[109]

    *See supra* section III.A.

[110]

    The defendants contend also that the case would have been wheeled out if the government had filed its petition as a new criminal matter, albeit subject to the related case provision of Rule 13 of the RDB.  That contention flies in the face of the text of the RDB.  Moreover, it is relevant here only because it demonstrates the defendants' failure to understand the assignment system.

    To be sure, defendants are right that Rule 13 of the RDB would not have required assignment of the contempt proceeding to the undersigned if the government had filed the contempt petition as a new criminal case.  But that would not have been because the contempt proceeding is not "related" to the underlying civil case, as defendants argue.  It would have been because Rule 13 expressly applies only to civil cases and therefore would not have come into play at all.  *See* RDB 13(a)(2)(C) ("Criminal cases are not treated as related to civil cases.").

*Conclusion*

For the foregoing reasons, defendants' motions for recusal or reassignment of the case, dismissal or denial of the petition, and suppression or return of evidence all are denied. The suppression and return branch of the motion is denied with prejudice to renewal in this case and the other branches with prejudice in all respects.

SO ORDERED.

Dated:          August 8, 2017

/s/          Lewis A. Kaplan
_____
Lewis A. Kaplan
United States District Judge